536 So.2d 555 (1988)
STATE of Louisiana
v.
Joel D. MEREDITH.
No. 88 KA 0289.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Rehearing Denied February 22, 1989.
*556 Abbott Reeves and Kathleen O'Brien, Asst. Dist. Attys., Donaldsonville, for State.
John Digiulio, Baton Rouge, for Joel D. Meredith.
Before WATKINS, CRAIN and SAVOIE, JJ.
WATKINS, Judge.
Joel D. Meredith was indicted by the Ascension Parish Grand Jury for theft of property having a value of $500.00 or more, a violation of LSA-R.S. 14:67. He was tried by a jury, which convicted him as charged. The trial court imposed a sentence of five years at hard labor. This sentence was suspended; and defendant was placed on supervised probation for five years, with the following special conditions: that defendant make restitution to the Ascension Parish School Board in the amount of $9,633.33; that he pay $2,500.00 to the Ascension Parish Criminal Court to defray the cost of the operation of the court; that he pay $5,000.00 to the Ascension Parish School Board to compensate it for loss and inconvenience; and that he pay $75.00 per month to the Department of Public Safety and Corrections for the first three years of his supervised probation, to defray the costs of supervision. The court further ordered that the restitution, court costs, and compensation are to be paid within thirty days of the finality of judgment. Defendant appealed, urging twenty-two assignments of error, as follows:
1. The trial court erred by denying an individual sequestered voir dire examination.
2. The trial court erred by permitting the state to amend its discovery answers and the bill of particulars on the day before trial.
3. The trial court erred by permitting the state to introduce certain documentary evidence.
4. The trial court erred by denying defendant's motion for a change of venue.
5. The trial court erred by prohibiting defendant's paralegal to conduct interviews with the witnesses.
6. The trial court erred by admitting improper opinion evidence and evidence of other crimes.
7. The trial court erred by admitting improper opinion evidence and evidence of other crimes.
8. The trial court erred by admitting improper opinion, hearsay testimony.
9. The trial court erred by admitting expert testimony based on hearsay.
10. The trial court erred by admitting hearsay testimony.
*557 11. The trial court erred by admitting improper opinion evidence.
12. The trial court abused its discretion in determining the length of the trial day.
13. The trial court erred by excluding a defense exhibit.
14. The trial court erred by finding that an expert was properly qualified.
15. The trial court erred by finding that an expert was properly qualified.
16. The trial court erred by admitting irrelevant testimony.
17. The trial court erred by admitting hearsay testimony.
18. The trial court erred by improperly instructing the jury.
19. The trial court erred by improperly instructing the jury.
20. The trial court erred by failing to give a special requested charge.
21. The evidence is insufficient to sustain the verdict.
22. The trial court erred by refusing to enjoin the state from engaging in prosecutorial misconduct and by failing to grant a hearing on all of defendant's claims of misconduct.

FACTS
At the time of the instant offense, defendant was the principal of East Ascension High School. He was charged with theft after an investigation indicated cash shortages in several accounts he administered as principal, as well as an apparently unauthorized disbursement to himself from another account. Shortly after the investigation began, defendant was notified by the Superintendent of Ascension Parish Schools that a tenure hearing would be convened to determine his continued status as an employee of the Ascension Parish School Board. Defendant, who suffers from serious heart problems, immediately resigned.
Defendant was charged with the theft of money from three accounts: the "Sippy" concession account (which included proceeds from the sales of concessions during school hours and at home football games), the lost book account, and football gate receipts from an athletic account. Defendant was also charged with obtaining a $600.00 disbursement from one of the school's accounts in payment for summer school expenses, although defendant was not acting as the school's chief administrator during the summer school term.

SUFFICIENCY OF THE EVIDENCE

(Assignment of Error No. 21)
Defendant contends that the evidence presented by the state was not sufficient to sustain his conviction of theft under LSA-R.S. 14:67. Specifically, defendant contends the evidence, which was largely circumstantial, failed to exclude every other reasonable hypothesis of innocence. Finding merit to this assignment of error, we pretermit a discussion of the other assignments of error and reverse the conviction.
The proper procedural vehicle for raising the issue of the sufficiency of the evidence is by a motion for a post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). A reviewing court, despite defendant's failure to proceed properly, must consider the evidence, when briefed upon assignment of error, to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in LSA-C.Cr.P. art. 821. The standard set forth in article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Recently, in State v. Mussall, 523 So.2d 1305 (La.1988), the Louisiana Supreme Court discussed the Jackson v. Virginia standard as applied under the Louisiana Constitution and LSA-C.Cr.P. art. 821. Therein, the court noted that the Jackson doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case. The court set forth a guide for reviewing courts, as follows:
First, a review of a criminal conviction record for sufficiency of evidence does *558 not require a court to "`ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt[.]'" Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis original.) (Footnotes deleted.)
Id. at 1309-1310.
Thereafter, the court emphasized that the principal criterion of a Jackson review is rationality. The doctrine does not require the court to decide whether or not, based on the entire record, the average rational trier of fact could be convinced beyond a reasonable doubt; nor does it permit the reviewing court to view just the evidence most favorable to the prosecution to decide whether or not that evidence convinced it beyond a reasonable doubt. The court concluded as follows:
[A] reviewing court may not disregard its duty under due process of law as interpreted by Jackson v. Virginia simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally. The actual trier of fact's rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution, and by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Thus, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. As Professor Wright observes, the important points are that "the court is not to substitute its judgment of what the verdict should be for that of the jury, but that at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." (Emphasis original.) (Footnotes deleted.)
Id. at 1311.
Viewing all the evidence in the light most favorable to the prosecution, we find that the state did not present sufficient evidence for the jury to conclude that the defendant was guilty of theft.
In order to convict the defendant of "theft" the state is required to prove the following elements beyond a reasonable doubt: (1) that the defendant misappropriated or took; (2) a thing of value; (3) that belonged to another; and (4) that the defendant had the intent to deprive the owner permanently of that which was misappropriated or taken. State v. Pittman, 368 So.2d 708 (La.1979).
The state's principal witness was Juanita Bacala. Ms. Bacala, a mathematics teacher and now principal of the school, participated in the state's investigation from its inception and kept detailed notes of her findings. Ms. Bacala was permitted to testify extensively from her notes and experiences with the school's administration.
In order to support the allegation that defendant stole money from the school's concession receipts, Ms. Bacala examined the deposit slips which were returned by the bank in the school's bank statements and compared those figures with the amount of the deposit slips originally prepared by the student workers. She also listed several dates on which she claimed the school was open and, therefore, the concession stand was open and a deposit should have been made. The total amount of the loss she calculated, from the dates when the amount actually deposited was *559 less than the amount shown on the original deposit slip, was $1,212.71. The loss estimated by Ms. Bacala for those days when she believes the concession stand was open and no deposit was made was $1,891.36. However, under cross-examination, Ms. Bacala admitted that, on several of those dates, it was possible that the concession stand actually might not have been open. Moreover, the deposit slips also reflected that, at least on occasion, money from the school's concession accounts was diverted into the school's general account because the student workers apparently wrote the wrong deposit number onto the deposit slip. Further, it was also shown that, on occasion, more money was deposited into the school's account than was shown on the original deposit slip. Thus, the state's evidence did not eliminate all possible explanations for the estimated losses beyond a reasonable doubt.
The state also claimed that approximately $1,000.00 was missing from the school's lost book account. However, the receipt book of the lost book account, apparently the only one for which receipts were kept, was not introduced into evidence. Although Ms. Bacala testified that the money was not accounted for, she did reveal that, after defendant resigned, almost $3,000.00 in cash was found in the school's vault, specifically earmarked as the "lost books" money from 1982-1985.
Ms. Bacala also testified that defendant requested $600.00 from her after a summer term during which she acted as the administrator. She claimed that, although defendant requested this money for summer school expenses, she had been unable to find a record of expenditures for this money.
Finally, Ms. Bacala testified that several thousand dollars was missing from the football ticket sales and concession sales at home football games. She testified that, during the third quarter of one of the games, she counted at least $1,200.00 (excluding sales from the visitors' stands) in receipts; however, only $1,083.00 was deposited. Although Ms. Bacala testified that the payments for teachers and school clubs for their work during the game had been deducted from the $1,200.00 figure, her later testimony indicated that expenses were deducted at the end of the game; thus, the $1,200.00 counted during the third quarter could not have represented an accurate total. Her testimony recounting a deficit in a subsequent game was similar. In a third instance, Ms. Bacala related that she personally counted the proceeds of the next game because of her suspicions relating to the two earlier games. According to her recollection, the eventual deposit was less than the amount collected. However, she testified that deposits were subsequently made reflecting payments to the student clubs whose members worked for the school during the game. Moreover, she further testified that her estimates of the missing sums did not take into account money that was used to replace sums withdrawn before the event for use as change during the game.
Ms. Bacala further testified that, at the time of defendant's resignation, the school's savings included certificates of deposit of almost $200,000.00 and that the certificates were bought with proceeds from the concession accounts. She testified, however, that all of the certificates were bought with checks and that none of the money that was not accounted for was represented in the certificates of deposit. Although she testified that the certificates of deposit showed each was purchased by a check, the certificates were not introduced.
The statutory rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R. S. 15:438; State v. Nealy, 450 So.2d 634 (La.1984). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986).
Herein, the state's case consisted almost entirely of Ms. Bacala's determination that money was missing, her estimates as to the amount of the losses, and her assurances *560 that she had checked the records of the school and could not account for the money in any way other than misappropriation by defendant. Due process requires a higher standard of evidence to support a criminal conviction, especially in light of the substantial showing by defendant that the losses either were nonexistent or could be accounted for in other ways. Additionally, the state, for reasons not expressed, failed to introduce the independent audit which was performed on the school's financial records. Without the full audit report it is virtually impossible for the state to prove that the allegedly missing funds were not spent for other school purposes. The state also failed to introduce any evidence in regard to the school board's policies or regulations dealing with the expenditure of school funds. We find, therefore, that the evidence presented by the state failed to exclude every reasonable hypothesis of innocence. Accordingly, there is insufficient evidence to support defendant's conviction.
Due to insufficiency of the evidence the conviction is reversed.
REVERSED.