590 So.2d 768 (1991)
STATE of Louisiana
v.
Steven J. DAUZAT.
No. Cr 91-86.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*769 George Higgins, Pineville, for defendant-appellant.
J. Edward Knoll, Dist. Atty., Marksville, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
DOMENGEAUX, Chief Judge.
The defendant, Steven J. Dauzat, was charged with theft of over $500.00, a violation of La.R.S. 14:67. After a bench trial, defendant was found guilty as charged.
Defendant was sentenced to five years at hard labor, three of which were suspended, with defendant to be placed on three years supervised probation upon his release. A special condition of probation was that defendant make restitution in an amount to be determined by his probation officer.
On appeal, defendant raises 12 assignments of error.

FACTS
The indictment against the defendant alleges that he stole $36,036.58 from the Brouillette Water System (BWS) from January 1, 1986 through June 5, 1988.
The BWS, established in 1969 with financing from the Farmers Home Administration, is a private nonprofit corporation governed by a board of directors. In 1981, defendant was elected secretary-treasurer of the BWS. His duties initially included depositing money and writing checks, but not collecting payments. In 1986, defendant became responsible for the collection of payments, 90% of which were in cash.
Mrs. Odine Dupuy, a part-time clerk employed by the BWS, described the billing procedures at trial. Mrs. Dupuy testified she determined the amount of each customer's monthly bill by converting meter readings of gallons of water consumed into money owed. She then prepared a three-part bill consisting of a "ledger card," which she kept, a receipt, which the customer kept, and a payment stub, which the customer returned with each payment. Each month Mrs. Dupuy turned the receipts and payment stubs over to the defendant, who was responsible for mailing the bills and collecting customer payments. After collecting the month's revenues, the defendant gave Mrs. Dupuy a delinquency list of past due amounts, which Mrs. Dupuy would use in preparing the next month's bills. The "ledger cards" which Mrs. Dupuy retained were the only billing *770 records that were not turned over to the defendant.
Mr. Erk Bordelon, an organizer of the BWS and its president during the defendant's term as secretary-treasurer, testified that the BWS was always short of money. He became particularly alarmed about the BWS' financial affairs in March of 1988 when he learned that the BWS was two months behind in its loan payments to the FmHA. He inquired about the situation to the defendant, who gave him the check numbers of the FmHA payments for the previous six months. Later, Mr. Bordelon learned that the FmHA never received the two checks.
Mr. Roland Laborde, a BWS board member and also its bookkeeper, testified he had been trying to see the defendant's records since January of 1988. He finally saw the bills for April and May of 1988 before they were delivered to the defendant. After comparing these figures with the April delinquency list prepared by the defendant and with the BWS bank statements, he calculated a shortage of approximately $1,800.00. He informed Mr. Bordelon about the shortage, and the two of them arranged a meeting with the defendant on Sunday, June 5, 1988.
At this meeting, Mr. Bordelon and Mr. Laborde informed the defendant of the shortage. Defendant claims he was not told of the exact amount; however, Mr. Bordelon and Mr. Laborde testified that they told the defendant that $1,800.00 was missing. The defendant responded that he had deposited all the money collected and that he did not know what was wrong. The defendant offered to resign twice during this meeting; the second offer was accepted. The next day, the defendant returned a filing cabinet and other records to Mr. Bordelon at the BWS office.
On Tuesday, June 7, 1988, the defendant's wife deposited $1,801.85 into the BWS' operating account. The deposit slip shows that $124.94 was in checks with the remainder of $1,676.91 in currency and coins. The defendant's wife testified that, while gathering the records to be returned to the BWS, she found an envelope containing approximately $1,800.00 in cash in a strongbox used to store money that had not yet been deposited. When his wife informed him of this money, the defendant called Roland Laborde, who told him to deposit it immediately. Mr. Laborde testified that the defendant stated that Mr. Bordelon had given him the money and that he had misplaced it. Mr. Bordelon, however, testified that he never gave the defendant so much money at one time. Mr. Bordelon further stated that the defendant did not mention finding this money when he returned the filing cabinet and records to the BWS office.
Mr. Al Leger, a certified public accountant, was asked to conduct a limited six month audit for the months of January 1988 through June 1988. Based upon this audit, Mr. Leger concluded there was a shortage of approximately $3,200.00. After performing a more detailed audit covering January 1, 1986 through June 30, 1988, Mr. Leger determined that the BWS was short a total of $36,036.58. At a meeting in December of 1988, defendant was told he could escape civil liability if he repaid the $30,000.00. Defendant did not admit to stealing the money, but agreed to repay the $30,000.00 within 30 days. The defendant never repaid the money, and he was indicted in October of 1989.

ASSIGNMENTS OF ERROR NOS. 1, 2 AND 3
In these assignments, the defendant contends that the evidence presented by the State was insufficient to sustain his conviction of theft of over $500.00. He argues that the State's evidence, which was primarily circumstantial, failed to exclude every reasonable hypothesis of innocence.
When the issue of sufficiency of the evidence is raised, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to *771 weigh the respective credibilities of the witnesses; therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel Graffagnino v. King, 436 So.2d 559, at 563 (La. 1983).
The rule as to circumstantial evidence is, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438.
At trial, the defendant posited several explanations, other than theft, to account for the BWS cash shortage. His defense was based upon his own inexperience in financial matters, an attack upon the report of the State's expert, Mr. Leger, and the woefully inadequate accounting controls and procedures employed by the BWS.
In reaching a verdict of guilty, the trial judge placed much emphasis on the discovery of the $1,800.00 in the defendant's home. The defendant attempted to show that it was not unusual for him to have so much cash on hand in early June. He introduced evidence which showed that, one year earlier, on June 8, 1987, he deposited $1,739.91 for the BWS, and two years earlier, on June 6, 1986, he deposited $3,217.51. Defendant explained that the largest deposit was often made after the tenth of the month, when the bills were due, but that he also made large deposits at the beginning of the following month, representing money collected for late payments.
The trial judge, however, found that the deposit of June 7, 1988, was not made in the normal course of business. Of concern to the trial court was that the defendant, when confronted with evidence of the cash shortage, did not recall having $1,800.00 at his home, not only at the meeting with Mr. Bordelon and Mr. Laborde, but also the next day, when he returned the files to Mr. Bordelon. The defendant testified the money was given to him by Mr. Bordelon; Mr. Bordelon denied ever giving the defendant so much money at one time. The trial court obviously resolved this credibility dispute against the defendant. Viewing the circumstances surrounding the discovery of the $1,800.00 in the light most favorable to the prosecution, we find the trial court properly concluded that the evidence excludes any reasonable hypothesis of innocence.
The defendant also disputes the accuracy of the State's expert report which showed a $36,000.00 cash shortage. He complains that the audit measured the cash shortage by the amount of money billed to customers less deposits rather than by the amount actually collected less deposits.
In preparing his audit, the State's expert, Mr. Leger, relied upon the "ledger cards" retained by Mrs. Dupuy which showed the amount each customer was billed each month. Mr. Leger admitted that the payment stub receipts returned by the customers when they paid their bills would have produced a more accurate account of the shortage. However, these stubs, stored in plastic garbage bags at the plant, had been destroyed by water or rats at the time he prepared his audit. The defendant does not dispute the accuracy of Mrs. Dupuy's "ledger cards," which were the only BWS records not under the defendant's control.
The defendant attempted to show that the BWS never received the entire amount of its billings. First, he claims that he never reconciled the actual monies collected with the payment stubs returned by the customers. Although he compared the returned cards with Mrs. Dupuy's ledger cards to prepare the monthly delinquency list, he did not verify that customers had remitted the full amount of their bills as stated on the payment stubs. At trial, defendant suggested this omission was caused by the BWS's failure to provide him with special instructions or training upon his election as secretary-treasurer.
The record reveals the defendant has a high school education, which included a bookkeeping course, and two months of training in bookkeeping at a business vocational school. The defendant sold life insurance for several companies, and he once owned his own grocery store. We fail to see how someone with the defendant's business background, even without any formal *772 bookkeeping training, could not have appreciated the importance of reconciling monies collected with the amounts billed.
The defendant also attributes the shortage to customers making partial payments not noted on the receipts and to the central collection points not turning over all money paid to them by BWS customers.
The BWS permitted its customers to pay their bills at certain grocery stores and two banks in the Brouillette area. The defendant would collect the money from the grocery stores after the tenth of each month. Kyle Dupuy, who manages one of these stores, testified that when a customer paid his water bill, he or another employee would circle the amount paid on the payment stub and would place the money and the stub into a money bag. Whenever a customer made a partial payment, Mr. Dupuy testified he would try to record the amount paid on the stub. If the store was busy, he stated that he would hurriedly write the amount paid on the stub and that often he had trouble reading his own handwriting. He also admitted that he occasionally cashed customer checks from the BWS money bag and that he used BWS money when the store was short of cash. However, he stated that he always totaled the money at the end of the month to see how much was missing and he would then replace it. He stated he thought it was all right to use the money from the BWS bag "just as long as all the money was there at the end of the month."
We, like the trial court, are unimpressed with the defendant's explanations as to why the BWS would have collected less than the full amount shown on Mrs. Odine Dupuy's billing cards. The defendant has identified many irregularities at the BWS, but those irregularities were either created or perpetuated by the defendant himself. Unlike the defendant in State v. Meredith, 536 So.2d 555 (La.App. 1st Cir.1988), writ denied, 544 So.2d 396 (La.1989), Mr. Dauzat has not shown that the BWS' losses were either nonexistent or could be accounted for in other ways. Viewing the evidence in the light most favorable to the prosecution, we find the State has proved beyond a reasonable doubt that the defendant stole cash money in excess of $500.00 from the BWS.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 4
Defendant argues the trial judge erred in not allowing Richard Anderson, his expert certified public accountant, to testify, based upon his experience auditing rural and municipal water districts, about reasonable explanations for any shortages other than theft. Mr. Anderson was not allowed to testify that he had personal knowledge of a water district whose collections went up after it changed accounting procedures. In the case involving Mr. Anderson, there was no evidence that theft caused the reduced collections before the new accounting procedures were implemented.
As an expert witness, Mr. Anderson may give opinions and state the factual bases therefor. C.E. art. 702. Code of Evidence Article 703 permits an expert, in forming opinions or inferences on the subject, to rely on facts or data which may not be admissible in evidence. However, C.E. art. 705 B states that if the facts upon which an expert bases his opinion are inadmissible, such basis shall only be elicited on cross examination. This article prevents a party from circumventing the requirements of the Code of Evidence by having an expert witness give an opinion and then testify about the inadmissible evidence which he relied upon in forming that opinion. Even if the expert is testifying on cross examination, his testimony may be limited by C.E. art. 403 which excludes relevant evidence if it may confuse, mislead, unduly delay, or cause undue prejudice.
As the record reflects, the trial judge did not permit Mr. Anderson to testify about his experience with the other water district. This experience was not relevant to the operation of the BWS, and the trial judge would have been asked to assume that the business practices at the two water districts were identical. Although the risk of undue prejudice created by the admission of excludable evidence has been recognized *773 to be less substantial when the case is tried by a judge rather than a jury, the trial judge may still exclude evidence which he determines is not relevant or which may confuse the issues.
Even if Mr. Anderson had been permitted to testify about other possible reasons for the money shortage, the trial judge may have rejected these explanations as not supported by the evidence. Counsel for defendant complains that he was prevented from presenting a defense, yet he was able to examine other witnesses about other reasons for the money shortage. Mr. Anderson was not prevented from testifying about any reasonable explanation for the money shortage. The court only prevented him from comparing his experience with one specific water district to his observations of the BWS.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
The defendant argues the trial judge erred in denying his motion to quash which was filed in response to the State's answer to the bill of particulars.
In the answer to the bill of particulars, the State responded that the alleged theft occurred between January 1, 1986 and June 5, 1988. Defendant complains that since the prosecutor relied heavily upon the $1,800.00 shortage discovered in April of 1988, the State should have given defendant a more sufficient description of this alleged misconduct in order to prepare a proper defense.
The minute entry for January 30, 1990 recites the following:
State's answer to defendant's Motion for Bill of Particulars and State's answer to defendant's Motion for Discovery and Inspection this day filed in open court and a copy of same handed to counsel for defendant. Pursuant to examination of said answers, counsel for defendant stipulated to the sufficiency of said answers and accepted same without rejection....
The motion to quash was filed on the day of defendant's trial. Counsel for defendant mentioned a previous ruling by Judge Culpepper concerning this same issue, but counsel did not argue his motion before the trial court. Counsel simply stated, "to protect the record ... I need to file a Motion to Quash."
The bill of particulars is not a discovery device. The State alleged and presented evidence that the defendant stole money from the BWS during the 30 month period from January 1, 1986 through June 5, 1988. The incident involving the $1,800.00 was only one portion of the $36,000.00 the defendant allegedly stole. We find the State's answer to be sufficient; therefore, the trial judge did not err in denying the motion to quash.

ASSIGNMENT OF ERROR NO. 6
Defendant argues the trial court erred in permitting the State to introduce "other crimes evidence" which was not previously revealed to the defendant.
In cross-examining three of the defendant's character witnesses, the prosecutor asked if they had heard anybody in the community talking about the defendant taking money from an insurance company. The defendant timely objected when each witness was questioned.
Code of Evidence Article 405 A does permit, on cross examination of a character witness, questions about specific acts which may have been the subject of rumors in the community, subject to the five safeguards of State v. Johnson, 389 So.2d 372 (La.1980). C.E. art. 405, comment (d). The safeguards set forth in Johnson are intended for jury trials. See La.C.E. art. 405, comment (d). In the present case, the defendant was tried by a judge. In his findings, the judge did not comment about the alleged acts of theft from an insurance company. The questions were properly asked during cross-examination of the defendant's character witnesses, and it does not appear that the defendant was prejudiced by these questions.
This assignment of error lacks merit.

*774 ASSIGNMENT OF ERROR NO. 7
The defendant argues the trial court erred in admitting the 1989 audit of the BWS which was conducted after the defendant resigned from office.
On direct examination, the State questioned Mr. Al Leger concerning the audit he prepared for the BWS for the year 1989, after the defendant's resignation as secretary-treasurer. Counsel for defendant immediately objected to the relevancy of any subsequent audit. The trial judge overruled defendant's objection stating that the 1989 audit was relevant for the court to determine the accuracy of the prior audits and the auditing techniques used by Mr. Leger.
Ironically, during cross examination, defendant's counsel questioned Mr. Leger about the 1989 audit report, and he introduced the previously objected to report into evidence as D-4. This audit was never introduced into evidence by the State; the State simply elicited testimony concerning the results of a subsequent audit.
It is difficult for defendant to argue the court should have excluded evidence which the defendant later introduced himself. The trial judge permitted Mr. Leger to testify about the subsequent audit for the purpose of testing the accuracy of Mr. Leger's auditing techniques. The Code of Evidence permits an expert to testify about the facts and data underlying his opinions and inferences. C.E. art. 703. If some of these facts and data are otherwise inadmissible, then Articles 705 and 403 will guide the court in determining whether the expert may disclose this information. C.E. art. 703, comments (d-f). The risk of prejudice is lessened when the trier of fact is a judge rather than a jury.
The judge in the present case stated he was admitting the evidence to weigh the auditing techniques and accuracy of the expert's findings. The defendant had an opportunity to fully cross-examine this expert and compare his audit report of 1989 to his findings of the previous years.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 8 and 9
These assignments of error have been abandoned by the defendant and will not be considered. Uniform RulesCourts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERROR NOS. 10, 11 and 12
By these assignments of error, the defendant complains that his sentence is excessive and illegal.
The imposition of sentence, although within statutory limits, may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime, or is nothing more than a needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Reed, 409 So.2d 266 (La.1982).
The trial judge is given wide discretion in the imposition of sentence within statutory limits, and the sentence imposed should not be aside as excessive in the absence of manifest abuse of this discretion. State v. Cann, 471 So.2d 701 (La.1985).
The defendant was sentenced to five years at hard labor, three of which were suspended, with the defendant to be placed on three years supervised probation upon his release. A special condition of probation is restitution to the BWS.
The trial court ordered a presentence investigation report, which showed the defendant had no prior arrests or convictions. He was very active in his church and community and he had a stable family life.
The sentencing range for theft of over $500.00 is up to ten years with or without hard labor. Defendant's sentence is less than one-half the statutory maximum. Considering the amount of money involved and that the victim is a nonprofit corporation which provides a public service, the *775 sentence of the defendant is not unconstitutionally excessive.
Defendant contends his sentence is illegal because the trial court imposed as a condition of probation that the defendant serve two years at hard labor. He argues this sentence violates La.C.Cr.P. art. 895 B, which allows the court to impose as a condition of probation two years without hard labor in felony cases.
Reviewing defendant's sentence, we find the trial court did not order prison time with hard labor as a condition of probation. Rather, the trial court sentenced the defendant to serve five years at hard labor, three of which were suspended. La.C.Cr.P. art. 893 now permits the court to suspend only part of a felony sentence. The only condition of probation imposed by the trial court is that the defendant make restitution to the victim, which is permissible.
Although we conclude the defendant's sentence is not unconstitutionally excessive, we nevertheless must vacate the sentence and remand the case for resentencing to correct two errors patent, to be discussed below.

ERRORS PATENT
The trial judge ordered the defendant placed on three years supervised probation with the following special condition:
... You will be placed on active supervised probation for a period of three (3) years with a special condition that it is my understanding that the Brouillette Water System's insurance has paid for a portion or large portion of the loss. So the special condition of probation is that you work out a schedule through your probation officer for the repayment of any portions of the monies taken that were not paid by the insurance and the cost incurred by the department ... by the Brouillette Water System in the prosecution of this matter, including costs of accountants and costs of attorneys.
Mr. Gaspard, I direct that you get with the various authorities and receive proof of those costs, in terms of receipts. That will be on a schedule to be arranged after this man is released.
When a sentencing judge orders a defendant to make restitution to the victim, both La.C.Cr.P. arts. 895(A)(7) and 895.1 require the court, and not the probation officer, to determine the amount of restitution. Because the court failed to determine the amount of restitution owed as a special condition of probation, the defendant's sentence is illegal. State v. Hardy, 432 So.2d 865 (La.1983). State v. Rogers, 517 So.2d 428 (La.App. 1st Cir.1987).
This error cannot be corrected by an appellate court. Therefore, defendant's sentence must be reversed with the case to be remanded for resentencing. Upon resentencing, the judge must determine the amount of money taken by the defendant which was not covered by insurance. Restitution for this loss may be ordered pursuant to either La.C.Cr.P. arts. 895 or 895.1.
Another patent error concerns the delay between imposition of sentence and the denial of the defendant's motion for a new trial.
At the sentencing hearing, the defendant's attorney filed a motion for a new trial, stating, "I do not want to argue that motion. I simply do that to preserve the record." The trial judge denied the motion and proceeded to sentence the defendant.
La.C.Cr.P. art. 873 requires that there be a 24 hour delay between the denial for a motion for a new trial and the imposition of sentence. Generally, this error, while patent, is not reversible unless the defendant is prejudiced by the lack of a sentencing delay. State v. Gaspard, 441 So.2d 812, 813 (La.App.3d Cir.1983), citing State v. White, 404 So.2d 1202 (La.1981). However, the Louisiana Supreme Court's most recent pronouncement on this issue has required a strict application of Article 873, particularly where the defendant challenges the penalty imposed. State v. Augustine, 555 So.2d 1331 (La.1990). Because defendant's counsel did not argue the motion for new trial, it is difficult to find any prejudice to the defendant in the trial court's failure to observe the sentencing delay in Article 873. However, as defendant *776 is challenging the penalty imposed, we find Augustine mandates a remand.

DECREE
For the above and foregoing reasons, the defendant's conviction is affirmed. The defendant's sentence is vacated and the case is remanded for resentencing with instructions to the trial judge to determine the amount of restitution owed.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED.