666 So.2d 1070 (1996)
STATE of Louisiana
v.
Donald J. VALE.
STATE of Louisiana
v.
Gayle P. NEIDHARDT.
Nos. 95-KO-0577, 95-K-1230.
Supreme Court of Louisiana.
January 26, 1996.
*1071 Elizabeth W. Cole, Donald Vale, Robert S. Glass, New Orleans, for Applicant.
John M. Mamoulides, District Attorney, Terry M. Boudreaux, Gretna, Louise S. Korns, New Orleans, for Respondent.
PER CURIAM.
Relators Neidhardt and Vale, and Michael Bergeron, were charged together with possession of heroin with the intent to distribute in violation of La.Rev.Stat. 40:966 A(1). In return for Bergeron's testimony against relators, the state agreed to and did dismiss the charge against him in January of 1991.
In December of 1992, relators' first trial ended in a mistrial. After a second trial in January of 1993, relators were both found guilty as charged. The court thereafter sentenced them to the mandatory term of life imprisonment at hard labor.
The court of appeal affirmed the convictions and sentences. State v. Vale and Neidhardt, 93-0895 (La.App. 5th Cir. 1/31/95); 650 So.2d 379. We then granted certiorari to consider whether the trial court unduly curtailed cross-examination of Bergeron with regard to an unrelated charge pending in another section of court at the time of trial. We now hold that the trial court's ruling precluded the defense from presenting relevant evidence of the full extent of the witness' possible motive and interest in testifying for the state.
In the fall of 1989, police officers conducted surveillance of Michael Bergeron. Over the course of the next several months, officers observed Bergeron travel from his home to make several apparent drug deals from different locations in Jefferson Parish.
On June 15, 1990, the officers confirmed their suspicions by using one of their confidential informants to make a controlled buy of two papers of heroin from Bergeron. In the exchange, the informant gave Bergeron five twenty-dollar bills previously photocopied by the officers to record their serial numbers.
Three days later, the officers followed Bergeron from his home to a Time Saver store, where they saw Bergeron step into a car occupied by Neidhardt and Vale. When Neidhardt drove off, the officers followed her. They first observed Vale hand Bergeron something over the front seat and then observed Bergeron hand something to Neidhardt from the back seat. The officer could not discern the item exchanged, but this "transaction of hands" precipitated the decision to stop the vehicle and arrest the occupants.
In the middle of the front seat, the officers found Neidhardt's purse partially opened and bulging out at the sides. On top of the opened purse were two small Tupperware plastic containers, one empty and the other partially filled with one and three-quarters ounces of heroin. The officers also recovered approximately 7,500 dollars in cash wrapped in two bundles. The currency included the five twenty-dollar bills given to Bergeron by the confidential informant on June 15, 1990.
In a search of relator Neidhardt's home later that day, the police recovered six papers of heroin inside a small plastic container hidden under a sofa cushion, several spoons containing heroin residue, and a metric balance scale. The officers also retrieved fourteen *1072 half-cup plastic Tupperware containers, which were identical to the ones recovered from Neidhardt's car.
In July of 1991, Bergeron gave a detailed statement to the police as part of his agreement to cooperate with the state in return for dismissal of the heroin charge against him. In that statement, Bergeron described how he had met with relator Neidhardt "at least" twice a week to obtain the heroin he sold on the streets. When asked specifically about Vale, Bergeron stated that he did not know whether Vale was distributing drugs at the time.
On November 17, 1992, Bergeron was arrested for a violation of La.Rev.Stat. 14:95.1, a felon carrying a concealed weapon. That charge, which was still pending in another section of court at the time of relators' trial, exposed him to a mandatory minimum penalty of three years at hard labor and a maximum sentence of ten years at hard labor, without benefit of parole.
On November 30, 1992, with trial scheduled for the next day, Bergeron told the prosecutrix for the first time that Vale had sold him heroin in a Tupperware container in a Wal-Mart parking lot several weeks before his June 1990 arrest. The prosecutrix immediately filed a notice of her intent to use that evidence at trial. At the hearing conducted on the following day before jury selection began in the first trial, and then later in the January 1993 trial, Bergeron stated that he had simply forgotten about the Wal-Mart sale until the prosecutrix urged him to remember everything he could in preparation for trial.
At trial, Bergeron testified that he had sold heroin to support his own drug habit and that after exhausting his supply on the morning of June 18, 1990, he arranged to meet Neidhardt at the Time Saver on Green Acres. When he got into her car, Bergeron handed Neidhardt 4,200 dollars for a new supply of heroin. According to Bergeron, he then passed an empty Tupperware container over the front seat to Vale, who passed back a Tupperware container filled with nearly two ounces of heroin. When he realized that the police had closed on them, Bergeron put that container over the top of the front seat of the car, hollering for relators to get rid of it.
Bergeron further testified that in the month preceding his arrest he had often seen Vale together with Neidhardt when he met with her about twice a week. Bergeron stated that he had called Neidhardt two or three weeks before his arrest to buy another "package" and that Vale delivered the heroin to him in the parking lot of a Wal-Mart store, a fact he forgot until his interview with the prosecutrix on the day before the first trial in December, 1992.
When defense counsel sought to cross-examine Bergeron about the pending charge as an alternative explanation for his recovered memory of the Wal-Mart sale, the state objected. The trial court ruled that in the absence of evidence of an explicit deal concerning the firearms offense, Bergeron's subjective expectations concerning that charge were irrelevant for purposes of cross-examination into his bias and interest in testifying for the state.
This court granted certiorari because the trial court's ruling, affirmed by the court of appeal, conflicted with numerous decisions by this court that to the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's "hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest." State v. Brady, 381 So.2d 819, 822 (La.1980) (collecting cases); see also State v. Nash, 475 So.2d 752, 755-56 (La.1985). A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. Id.
The state now concedes the error of the trial court in sustaining its objection and of the appellate court in accepting its argument on the exclusion of the relevant evidence of bias or interest. The state, however, argues that the error was harmless.
Because the court of appeal agreed with the ruling of the trial court, the court did not address the issue of harmless error, and that issue did not prompt this court's grant of *1073 certiorari. It is therefore appropriate to remand the case to the court of appeal to determine on the record whether the error was harmless beyond a reasonable doubt. See State v. Gibson, 391 So.2d 421 (La.1980); State v. Code, 627 So.2d 1373 (La.1993).
Accordingly, the judgment of the court of appeal is reversed, and the case is remanded to the court of appeal with instructions to conduct a harmless error analysis based on the record.