689 So.2d 627 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
Laurence BOSWELL, Jr., Defendant-Appellant.
No. 96-801.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1997.
*628 Charles F. Wagner, Dist. Atty., J. Stanley Goodwin, Alexndria, for State of La.
Harold A. Van Dyke, III, Pineville, for Laurence Boswell, Jr.
Before WOODARD, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
Defendant, Laurence Boswell, Jr., appeals his conviction for two counts of distribution of cocaine, in violation of La.R.S. 40:967(A)(1). The bill of information, filed on June 1, 1995, alleged Defendant distributed cocaine to an undercover agent and a confidential informant on two occasions. After pleading not guilty, Defendant was tried by jury on March 12, 1996 through March 13, 1996. He was found guilty of both counts of distribution. He filed a Motion for New Trial and a Motion for Post Verdict Judgment of Acquittal, which were denied on April 12, 1996. On that same date, Defendant was sentenced to fifteen years at hard labor on each count, the sentences to run concurrently. Defendant orally objected to his conviction and sentence after the sentences were imposed. On April 24, 1996, the State filed a habitual offender bill against Defendant, charging him as a second felony offender. Defendant denied the allegations in the bill at his arraignment on June 7, 1996; however, at his habitual offender hearing, held on August 13, 1996, he admitted to his status as a second offender. His original sentence was set aside and he was resentenced to eighteen years at hard labor on each count, the sentences to run concurrently. A pro se Motion to Reconsider Sentence was filed by Defendant which was subsequently denied by the trial court. He now *629 appeals his conviction, alleging three assignments of error. We affirm in part and remand with instructions.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
By these assignments of error, Defendant alleges the verdict is illegal and unconstitutional claiming that the evidence was insufficient to sustain a conviction and that the trial court erred in refusing to grant his Motion for Post Verdict Judgment of Acquittal. Defendant did not argue these assignments of error in his brief. Failure to argue an assignment of error on appeal constitutes a waiver of that assignment of error. State v. Lewis, 576 So.2d 1106 (La.App. 3 Cir.), writ denied, 580 So.2d 669 (La.1991). See also Uniform RulesCourts of Appeal, Rule 2-12.4. Therefore, these assignments of error are deemed abandoned.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, Defendant claims the following:
The trial court erred in refusing to allow defendant to question Pamela Johnson Dauzat in regard to recent arrests and any bias, prejudice or influence which her pending charges might have had on her testimony; as well as any arrangements, promises, anticipated relief or conversation(s) she had with any law enforcement officials; and other issues arising from these arrests.
Dauzat testified that she was the confidential informant involved in the undercover narcotics transactions at issue. She identified Defendant as the individual who distributed cocaine to her on February 24 and March 6, 1995. During Dauzat's direct examination, she admitted that prior to the drug transactions at issue, she went to Officer Warren Driggers to seek help with her pending arrests. She testified she entered into an agreement with the State wherein the charges pending against her would be dropped in exchange for her assistance and information in working narcotics cases.[1]
Under cross-examination, when Defendant attempted to impeach Dauzat with questions as to whether she had used narcotic drugs in the thirty days proceeding trial or whether she had been arrested on drug charges within two to three weeks prior to trial, the State objected. Sustaining the objection, the trial court ruled that Defendant could not mention any of Dauzat's prior arrests.
The State now concedes that the trial court's ruling constituted error, citing the case of State v. Vale, 95-1230 (La.1/26/96), 666 So.2d 1070, in support of its concession. In Vale, Donald Vale, Gayle Neidhardt, and Michael Bergeron were charged with possession of heroin with the intent to distribute. "In return for Bergeron's testimony against relators, the state agreed to and did dismiss the charge against him in January of 1991." Id. at 1071. On November 17, 1992, prior to trial, Bergeron was arrested for a violation of La.R.S. 14:95.1, a felon carrying a concealed weapon. The defendant sought to cross-examine Bergeron about his pending charge "as an alternative explanation for his recovered memory of the Wal-Mart sale...." Id. at 1072. The trial court disallowed the admission of such evidence, finding that "in the absence of evidence of an explicit deal concerning the firearms offense, Bergeron's subjective expectations concerning that charge were irrelevant for purposes of cross-examination into his bias and interest in testifying for the state." Id. The supreme court granted certiorari:
[B]ecause the trial court's ruling, affirmed by the court of appeal, conflicted with numerous decisions by this court that to the extent exposure of a witness's motivation is a proper and important function of the constitutionality protected right of cross-examination, a witness's `hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias *630 or interest.' (citations omitted). A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. (citation omitted).
Id. at 1072.
The court in Vale remanded the case for a harmless error review in light of the trial court's error. We agree that the trial court committed error in refusing to allow Defendant to question Dauzat about her pending charge, therefore, a harmless error analysis is necessary. In State v. Wille, 559 So.2d 1321, 1332 (La.1990), appeal after remand on other grounds, 595 So.2d 1149 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), the court found the following with respect to the application of the harmless error analysis to confrontation errors:
Confrontation errors are subject to a Chapman harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Id. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. at 684, 106 S.Ct. at 1438.
In the present case, although Dauzat's testimony was important to the State's case, it was cumulative and was corroborated on many material points by the testimony of Officer Debra Blackwood of the Alexandria City Police Department. Dauzat testified that she met with Officer Blackwood on February 24, 1995, and the two went to the defendant's house. She further testified that when she got out of the car and approached Defendant, who was sitting in a van, he wanted to meet her friend. Dauzat said she told Officer Blackwood to get out of the car and come meet Defendant. According to Dauzat, Officer Blackwood did as she was instructed whereupon Defendant told the two women to sit outside behind his trailer. In her testimony, Dauzat claimed Defendant asked Officer Blackwood many questions, such as where she worked and where she lived. Dauzat said she finally told Defendant she wanted "a twenty" and Officer Blackwood wanted "two herself." According to Dauzat, Defendant went inside the trailer and, when he returned, he threw her drug orders on the ground. She testified he then threw Officer Blackwood's order on the ground at her feet. Dauzat also testified that another male was present.
Likewise, Officer Blackwood testified that she met with Dauzat on February 24, 1995. She also testified that when they arrived at Defendant's house, Dauzat exited the car and approached Defendant in his van. Officer Blackwood said that the two talked for a few minutes and then Dauzat motioned for Officer Blackwood to come over. According to Officer Blackwood, she, Dauzat, and Defendant then went to the back of the residence, sat down in chairs, and Defendant began questioning her. Officer Blackwood stated that Dauzat then informed Defendant that she needed "a twenty," and asked her if she needed any, to which Officer Blackwood responded that she "needed two." According to Officer Blackwood, after receiving money from Dauzat, Defendant went inside the trailer and when he returned, he dropped a package in front of Dauzat. Officer Blackwood stated she gave her money to the other male present and once Defendant learned this, he went back inside the trailer, returned shortly, and dropped a package of cocaine on the ground beside her chair. Officer Blackwood further testified that Defendant then placed his hands on her shoulders and patted her down while the other male picked up her package and gave it to her.
Regarding the charges of March 6, 1995, Dauzat testified she again met with Officer Blackwood and went to Defendant's house. She said both women got out of the car and *631 sat down to talk with Defendant and, as before, he asked Officer Blackwood a lot of questions. Dauzat claimed there was no one else present. She said that Defendant patted Officer Blackwood down and found her pager which he put about fifteen feet away from where they were sitting. Dauzat testified that she told Defendant they wanted sixty dollars worth of crack, that Defendant went inside the trailer, and, when he returned, he put the drugs at Officer Blackwood's feet.
In her testimony, Officer Blackwood said she and Dauzat revisited the defendant on March 6, 1995. She testified that both of them exited the vehicle and went to the backyard to speak with Defendant where he again asked her personal questions. Officer Blackwood said Defendant asked to raise her shirt, at which time he saw a pager on her hip. She said he turned the pager off, but because the pager was an audio transmitter, she turned the pager back on and placed it on her hip. She further testified that Defendant told her to take it off so she did and placed it on the steps, about ten to fourteen feet away. Officer Blackwood then testified that Dauzat told Defendant that they needed a "sixty," that he went inside the trailer, and that he returned after about five minutes. She said that Defendant instructed her to give Dauzat the money. According to Officer Blackwood, Dauzat threw the money on the ground. She said that Defendant then threw a small package at Dauzat's feet which she picked up and gave to her. Finally, Officer Blackwood identified Defendant as the person she obtained cocaine from on both February 24th and March 6th.
As we have noted, the testimonies of Officer Blackwood and Dauzat were cumulative and corroborating on many material points. We also note that Defendant cross-examined Dauzat extensively about any inconsistencies between her testimony and that of Officer Blackwood, particularly regarding the technical exchange of money and handling of the drugs. Dauzat even admitted that she had reviewed Officer Blackwood's report prior to testifying.
She was further cross-examined about her agreement with the police to have the charges against her dropped. Officer Driggers testified about the "working agreement" between Dauzat and the State that was introduced into evidence. When Dauzat was asked what she thought she would be required to do by signing the agreement, she answered, "I was going to assist them Metro Narcotics in any kind of information that they needed." When asked if she was assisting the police just to get her pending charges dropped, she said, "Yes." She testified that she was aware "to somewhat degree" that she was required to get an arrest of someone in order to receive help with her pending charges. Ms. Dauzat further acknowledged that she had incentive to get Defendant or whoever the police picked out arrested in order to get the charges of possession of cocaine and unauthorized use of a movable against her dismissed. Finally, she admitted that she previously pled guilty to distribution of cocaine.
Upon considering the Wille factors, we find that the confrontation error committed in the present case was harmless. The testimony of Dauzat was cumulative and corroborated by Officer Blackwood. Dauzat was cross-examined extensively regarding her incentive for entering into an agreement with the police and about her prior conviction for distribution of cocaine. Finally, even without Dauzat's testimony, Officer Blackwood's testimony was sufficient to convict Defendant. In State v. Hongo, 625 So.2d 610, 616 (La. App. 3 Cir.1993), writ denied, 93-2774 (La.1/13/94), 631 So.2d 1163, this court stated the following:
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. (citations omitted). The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. (citations omitted). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. (citations omitted).
Officer Blackwood's testimony did not contain internal contradictions nor did it conflict *632 with the physical evidence or the testimony of Dauzat. Thus, Officer Blackwood's testimony alone was sufficient to convict Defendant. For the foregoing reasons, we find that this assignment lacks merit.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, we review all appeals not only for errors designated in the assignments of error, but also for errors that are discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. From the face of the record, we find it contains several errors patent.
The bill of information contains an error in the citation of the statute for which Defendant is charged. The bill charges Defendant with two counts of distribution of cocaine and cites "La.R.S. 40:967 A1C" as the statute violated. Although 40:967(A)(1) is the correct cite for distribution, subsection "C" defines the crime of possession, for which defendant was not charged. La.Code Crim.P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
This court has found that if a bill of information states the essential facts of the offense charged, the defendant does not object to any error in the bill of information, and the defendant does not claim surprise or prejudice, any error in the bill of information is harmless. State v. Morris, 614 So.2d 180 (La.App. 3 Cir.1993). Since the bill of information in the present case states the essential facts of the offense charged and Defendant has not objected to this error, nor claimed surprise or prejudice, this error is harmless.
The record also reflects that Defendant was sentenced immediately after the trial court's denial of his Motion for New Trial and his Motion for Post Verdict Judgment of Acquittal. La.Code Crim.P. art. 873 requires there be a 24-hour delay between the denial of a motion for new trial and the imposition of sentence. In State v. Dauzat, 590 So.2d 768, 775 (La.App. 3 Cir.1991), writ denied, 598 So.2d 355 (La.1992), this court stated the following concerning an identical error patent:
Generally, this error, while patent, is not reversible unless the defendant is prejudiced by the lack of a sentencing delay. (citations omitted). However, the Louisiana Supreme Court's most recent pronouncement on this issue has required a strict application of Article 873, particularly where the defendant challenges the penalty imposed. State v. Augustine, 555 So.2d 1331 (La.1990).
Although, in Dauzat, we could not find any prejudice by the trial court's failure to observe the delay in sentencing, we remanded for resentencing since the defendant challenged his sentence on appeal. Id. Defendant in the case sub judice is not challenging his sentence on appeal nor has he alleged any prejudice in the lack of delay. Furthermore, Defendant's original sentence was set aside when the trial court resentenced him as a habitual offender. The fifth circuit has held that resentencing a defendant as a habitual offender renders any error in the trial court's failure to delay the original sentence in accordance with Article 873 as harmless. State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070. We agree with our colleagues in the fifth circuit and hold the trial court's error in the case sub judice is harmless.
La.Code Crim.P. art. 880 provides that, when imposing sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we amend the sentence to reflect that Defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; this case is remanded and the trial court is ordered to amend the commitment and minute entry of the sentence to *633 reflect that Defendant is given credit for time served. State v. Moore, 93-1632 (La. App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La.3/30/95), 651 So.2d 858.
La.Code Crim.P. art. 930.8(C) provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform Defendant. This defect has no bearing on whether the sentence is excessive and, thus, is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. The three-year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform the defendant of the prescriptive period in advance; therefore, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).
Finally, we reviewed Defendant's habitual offender proceeding. Initially, Defendant denied the habitual offender charges against him. However, at the habitual offender proceeding held on August 13, 1996, Defendant admitted to his status as a habitual offender. No other proof of Defendant's habitual offender status was presented. While the trial court informed Defendant of his right to have the State prove his identification as a habitual offender as required by La.R.S. 15:529.1(D), the trial court did not inform Defendant of his right to remain silent. Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, in State v. Johnson, 432 So.2d 815 (La.1983), writ granted on other grounds, 438 So.2d 1113 (La.1983), appeal after remand, 457 So.2d 1251 (La.App. 1 Cir.1984), appeal after remand, 471 So.2d 1041 (La.App. 1 Cir. 1985), the Louisiana Supreme Court held this statute clearly recognizes a defendant's right to remain silent, and implicitly provides the defendant should be advised of that right. This court has held that where "a defendant acknowledges his prior convictions without being advised of his right against self-incrimination, and defendant's acknowledgment is the only proof of prior convictions offered by the state, defendant's acknowledgment is invalid." State v. Norris, 94-1064 (La.App. 3 Cir. 3/1/95), 651 So.2d 490, 491, citing State v. Gautreaux, 607 So.2d 1086 (La.App. 3 Cir. 1992).
However, we note the supreme court's decision in State v. Harris, 95-0900 (La.5/19/95), 654 So.2d 680, which found that the habitual offender hearing at issue was fundamentally fair even though the defendant was not informed of his rights. This court has distinguished Harris in State v. Roberson, 94-1570 (La.App. 3 Cir. 11/2/95), 664 So.2d 687. In Roberson, we found:
This case can be distinguished from a recent Louisiana Supreme Court case, State v. Harris .... In that case, the court said that, where the state has presented evidence that the defendant is the same person previously convicted of the predicate felonies that led to the multiple bill, the hearing is fundamentally fair, even if the defendant is not advised of his rights before admitting to his identity. In this case, no evidence, except the testimony of the defendant himself, was presented to show that a Ray Roberson was convicted of any prior offenses. No independent evidence or testimony was introduced to prove the defendant's identity. Because no competent evidence was introduced against the defendant, and because he was not specifically informed of his right to remain silent before his admission, the defendant was denied a fundamentally fair hearing. Accordingly, the defendant's sentence is vacated and the case remanded for a new habitual offender hearing and resentencing.
Id., at 690.
As with Roberson, the present case is distinguishable from Harris since no evidence other than Defendant's admission was offered to prove his status as a habitual offender. Notwithstanding the Roberson decision, in the more recent case of State v. Payne, 94-1628 (La.App. 3 Cir. 5/22/96), 677 *634 So.2d 527, we held a habitual offender hearing was fundamentally fair under Harris[2] even though the defendant was not informed of his right to remain silent before admitting his habitual offender status and no independent evidence was introduced by the State to prove the defendant's identity as a habitual offender. We noted the colloquy between the trial court and the defendant, in which the trial court extensively informed the defendant of his right to a hearing where the state would have to prove he was the same person previously convicted. The trial court also told the defendant the hearing "would be with all due process and all the rest." Id. at 529. Further, the trial court noted the defendant's admission was part of a plea agreement and then explained to the defendant in detail the sentence he would receive. Id. Affirming the defendant's habitual offender conviction, we found that:
There have been no allegations or showing that the admission was involuntary. Defendant was represented by counsel at the hearing, he was informed of the allegations in the multiple offender bill and he was advised of his right to a hearing wherein the state would have the burden of proving he was the same person previously convicted of the predicate offense. Furthermore, the admission was part of a plea agreement and defendant was fully apprised of the sentence he was to receive.
Id. at 530.
The instant case is similar to Payne in that Defendant was represented by counsel, advised of the allegations in the habitual offender bill, and extensively informed of his right to have a hearing where the State would have to prove his identity as a habitual offender. The following colloquy took place between Defendant, the prosecutor, and the trial court:
BY MR. GOODWIN:
Your Honor, this matter is Docket 240,546, State of Louisiana versus Laurence Boswell, Jr. This is before the Court on a habitual bill filed by Mr. Yeager. Are you Laurence Boswell?
BY THE DEFENDANT:
Yes.
BY MR. GOODWIN:
And you're present with your attorney, Andy Van Dyke, is that correct?
BY THE DEFENDANT:
Yes.
BY MR. GOODWIN:
And Mr. Van Dyke and you have gone over the habitual bill of information?
BY MR. VAN DYKE:
I've explained to Mr. Boswell what its [sic] about.
BY MR. GOODWIN:
Okay. It charges first of all, that you were convicted of distribution of a controlled dangerous substance Schedule I, to-wit, marijuana in the Ninth Judicial Court of Rapides Parish in Docket Number 224,026 and was [sic] sentenced on January 8, 1990. Further the Court suspended imposition of the sentence and placed you on active probation under direct supervision of the State Director of Probation and Parole supervision for a period of two years with special conditions and a $500.00 fine plus costs of Court. Do you admit or [sic] that allegation?
BY THE DEFENDANT:
I admit it.
BY MR. GOODWIN:
It further alleges that after a trial you were convicted of two counts of distribution of a Schedule II controlled dangerous substance, to-wit, cocaine, on March 13, 1996 in this case, do you admit or deny that allegation?
BY THE DEFENDANT:
I deny it.
BY MR. VAN DYKE:
He admits the conviction but does not admit guilt and has appealed this proceedings [sic]. Is that right?
BY THE DEFENDANT:
Yes.
* * * * * *

*635 BY THE COURT:
All right, Mr. Boswell you understand that under this habitual offender indictment or bill you have the right to plead not guilty? You understand that don't you?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
You have the right to have the State to prove that are you [sic] the same Laurence Boswell that they say committed the previous crimes that you're now saying you did, you understand thatyou have the right to a hearing?
BY THE DEFENDANT:
Excuse me, repeat that.
BY THE COURT:
You have the right to a hearing to determine whether or not you're the same Laurence Boswell that either has been convicted of those crimes under those docket numbers. You understand that don't you?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Okay. You do have the right to an attorney and you have your attorney with you, is that correct?
BY THE DEFENDANT:
Yes.
BY THE COURT:
You do understand that it will be the State's obligation to prove beyond a reasonable doubt that you are the [sic] in fact same Laurence Boswell who has in fact committed the various crimes in that indictment, you understand that don't you?
BY THE DEFENDANT:
Yes.
BY THE COURT:
Okay. And knowing your rights in regard to this particular charge it is your wish to waive any of your rights to have a hearing under this matter and enter a plea of guilty is that correct? Or admit the allegations that you are in fact the same Laurence Boswell?
BY THE DEFENDANT:
Yeah, I'm the same Laurence Boswell, but I'm not guilty of those charges. I'm being rail-roaded.
BY THE COURT:
I understand. You're not admitting that you in fact committed any crimes, but that you are the same Laurence Boswell ... (interrupted)
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
... who has been convicted under those particular docket numbers?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
Okay. With that the Court will accept Mr. Boswell's admittance that he is in fact the same Laurence Boswell.
BY MR. GOODWIN:
Just to reiterate, Mr. Boswell then you do admit that you were the same person convicted in Docket Number 224,026 of this court and sentenced on January 8, 1990?
BY THE DEFENDANT:
I guess that's the date on that.
BY MR. GOODWIN:
And while you deny your guilt in this matter you do admit you're the person who was convicted of two counts of distribution of controlled dangerous substance and was sentenced on April 12, 1996 in this particular case?
BY THE DEFENDANT:
Yes.
BY THE COURT:
All right. With that this Court finds that the waiver of rights as far as any admittance of guilty [sic] is concerned is acknowledged. But even more than that any waiver of rights in regard to Mr. Boswell admitting that he is in fact the same one who has been convicted in those particular docket numbers has been a knowing, intelligent, and voluntary waiver.
Furthermore, as in Payne, Defendant has not alleged his admission was involuntary. Payne is distinguishable, however, because *636 the trial court in the present case did not inform Defendant of the sentence he would receive nor was Defendant's admission part of a plea agreement.
As such, we find Defendant's habitual offender admission valid because the habitual offender hearing was fundamentally fair. Defendant was represented by capable counsel who explained the habitual offender charge to him. Defendant readily admitted the prior offense to the trial court in the presence of his attorney after being extensively informed of his right to a hearing where the State would have to prove his identity as a habitual offender beyond a reasonable doubt. Absent an allegation or showing that the admission was involuntary, there is no constitutional requirement for a valid identity admission analogous to a Boykin colloquy, which must accompany a valid plea of guilty, if the habitual offender proceedings, as a whole, accorded the defendant fundamental fairness and due process. Harris, 95-0900, 654 So.2d 680. We believe the habitual offender proceedings in the instant case did provide Defendant fundamental fairness and due process and we find this error patent to be harmless.

CONCLUSION
Defendant's conviction and sentence is affirmed. However, the case is remanded for the trial court to amend the commitment and minute entry of Defendant's sentence to reflect that he is given credit for time served. Upon remand, the trial court is also directed to inform Defendant of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and file written proof that he received the notice in the record of the proceedings.
AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
WOODARD, J., dissents.
NOTES
[1] According to Dauzat, the pending charges against her were possession of a controlled dangerous substance, schedule two, and unauthorized use of a movable. Assistant District Attorney Thomas Yeager testified at trial that the unauthorized use of a movable charge was dismissed outside of this agreement and the possession of controlled dangerous substance charge had not yet been dismissed.
[2] In State v. Harris, 95-0900 (La.5/19/95), 654 So.2d 680, the supreme court reviewed the case on an application for post-conviction relief. In State v. Payne, 94-1628 (La.App. 3 Cir. 5/22/96), 677 So.2d 527, we held Harris also applies to appeals.