ROLAND L. BELSOME, Judge.
IjL.R. appeals the judgment rendered by the Juvenile Court for the Parish of Orleans adjudicating him delinquent of one count of La. R.S. 14:27 and 14:64 relative to attempted armed robbery. For the reasons that follow, we affirm the adjudication.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
On December 7, 2009, L.R. was charged by delinquency petition with one count of attempted armed robbery. L.R. appeared in court on December 8, 2009, for a pretrial hearing. L.R. denied the offense charged and an adjudication hearing was set for January 5, 2010.
On January 4, 2010, the State filed a motion in limine to prevent defense counsel from mentioning or questioning any witness concerning impermissible and irrelevant character evidence. The motion was centered on the potential questioning of the victim, Edward Lewis. The State acknowledged that Mr. Lewis helped run a stand in the parking lot where this incident occurred. At the stand, Mr. Lewis sold various items, some of which might have included illegal materials, such as CDs and DVDs. The State argued that Mr. Lewis was not in the process of making any sales when he became a victim of the attempted armed robbery, and 12there was no evidence that the attempted armed robbery had any connection with Lewis’ business. The State also maintained that Mr. Lewis had not been convicted of any crime, and no charges were pending against him in connection with any illegal sales.
L.R. filed an opposition to the motion in limine and a motion for full cross-examination. On February 17, 2010, after hearing argument on the motions, the trial court ruled in favor of the State, allowing questions as to prior convictions, and as to any deals the State may have offered for immunity in exchange for testimony. On February 18, 2010, the trial court clarified its February 17, 2010 ruling, specifically denying L.R.’s motion to seek full cross-examination of the State’s witness, stating:
The Court will allow defense to cross-examine any of the state’s witnesses regarding prior convictions and any plea agreements or offers of immunity granted to the witness in exchange for the witnesses’ testimony. However, should any witness assert their privilege pursuant to the 5th Amendment of the United States Constitution and refuse to answer any questions that would potentially subject the witness to criminal prosecution, the Court will not order the witness to answer said question.
On March 2, 2010, L.R. filed a writ application with this Court, arguing, as he does in this appeal, that the trial court erred in failing to allow full cross-examination, thereby denying L.R. the opportunity to present a complete defense. This Court declined to exercise its supervisory jurisdiction. State of Louisiana in the Interest of L.R, 2010-0289 (La.App. 4 Cm. 4/l/10)(unpub.).
The adjudication hearing was held on May 18, 2010. The State presented testimony from Edward Lewis, Detective Gregory Powell, and Officer Frankie Watts. L.R. did not testify or call any witnesses on his behalf.

13Testimony of Edward Lewis

Edward Lewis testified that on November 30, 2009, he was working in the 11900 block of Hayne Boulevard, at which time he was approached by L.R. to purchase an amplifier. Mr. Lewis told L.R. he was not interested in an amplifier, but to bring it by and he would take a look at it. L.R.’s friend, Darnell Benjamin, returned with the amplifier, while L.R. stood on top of the levee adjacent to Hayne Boulevard. *947 Addressing Darnell, Mr. Lewis informed him that he did not need the amplifier, but gave Darnell ten dollars to “keep [Darnell] off the streets tonight.” Mr. Lewis explained that he recognized Darnell and L.R. from the neighborhood and sometimes gave them money to help them out.
As Mr. Lewis was reaching into his pocket for the ten dollars, he felt a metal object, presumably a gun, pressed against the back of his head, and heard a voice demanding that he give up everything in his pockets. Mr. Lewis reached back, grabbed the gun, twisted it, and struggled as he fell to the ground. Mr. Lewis stated that when he turned around, he clearly recognized L.R. Mr. Lewis jumped up and ran behind his truck, and L.R. began to pursue him, but then turned and fled.
Mr. Lewis explained that Ralph, the proprietor of the snowball stand located in the parking lot where the incident occurred, called 9-1-1 to report the incident. Mr. Lewis did not remember what physical description he gave when the police arrived, but he did provide the police with L.R.’s name. Mr. Lewis also identified L.R. in court as the person who approached him with the gun.
On cross-examination, Mr. Lewis was questioned whether Ralph called the police because Mr. Lewis did not want to get into trouble with the police over the |4CPs and DVDs that he was selling from the parking lot. Mr. Lewis responded to this inquiry by invoking his Fifth Amendment right. Defense counsel objected, arguing that the basis for the question was to show that Lewis was biased and had an interest in cooperating with the police. Noting the objection, the trial court stated:
Again, if you want to ask him whether or not he’s been offered or promised anything in exchange for giving any testimony, I don’t have a problem with you asking that question because it goes to bias, but you know the Constitution of the United States gives every person a right not to incriminate themselves. So, unless you want me to change the law then I have to apply the law to the facts.
On re-direct examination, Mr. Lewis was asked: “Has me or anybody else in law enforcement promised you any immunity or anything in exchange of value for your cooperation with the police or for your testimony at trial today?” Mr. Lewis responded: “Nobody offered me anything.”

Testimony of Detective Gregory Powell

Detective Gregory Powell testified that on November 30, 2009, he responded to a call of an attempted armed robbery. In connection with his investigation, Detective Powell interviewed Darnell Benjamin, who was already detained when Detective Powell arrived. ■ Detective Powell understood that Darnell had been apprehended while walking away from the scene with some amplifiers. Darnell named L.R. as the individual who attempted to rob Mr. Lewis at gunpoint and positively identified a photograph of L.R. Detective Powell testified that no gun was ever recovered in connection with the incident.
Detective Powell further testified that Lewis identified L.R. in a six-person photographic lineup. The results of the photographic line-up were identified by Detective Powell and introduced into evidence. Detective Powell stated that he did |finot offer Mr. Lewis anything of value, or coerce him in connection with Ms identification of L.R. In response to a question asked on cross-examination, Detective Powell explained that he did not investigate Mr. Lewis in connection with the alleged stolen amplifier because, as he stated, Mr. Lewis “never had the amplifier”. Detective Powell acknowledged that he was aware that Mr. Lewis was operating some sort of business involving CDs *948 and DVDs in the parking lot on the day of the incident, but stated that he did not investigate Mr. Lewis as to the alleged sale of CDs or DVDs on that day.[1]
At the conclusion of the hearing, L.R. was adjudicated delinquent of the charged offense. The trial court indicated that it found Mr. Lewis’ testimony “very credible” and determined that the State proved the elements of case beyond a reasonable doubt. Following a pre-disposition investigation, a disposition hearing was held on June 22, 2010. L.R. was committed to the Office of Juvenile Justice for a period of one year and one month with credit for time served. This appeal followed.
LAW AND ANALYSIS
As his sole assignment of error, L.R. asserts that the trial court erred in denying his counsel the opportunity to fully cross-examine Mr. Lewis, thereby denying L.R. the opportunity to present a complete defense.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. La. Const. Art. I, § 16; State v. Lawrence, 2008-0397, p. 8 (La.App. 4 Cir. 2/4/09), 5 So.3d 896, 902. The essential purpose of the confrontation right is |fito secure, for the opponent, the opportunity of cross-examination. Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Robinson, 2001-0273, p. 5 (La.5/17/02), 817 So.2d 1131, 1135. Encompassed in the right of confrontation is the right of the accused to impeach a witness for bias or interest. Lawrence, 2008-0397, p. 9, 5 So.3d at 902. The right to expose a witness’s motivation in testifying is both a proper and important function of the constitutionally protected right of cross-examination. State v. Chester, 97-2790, p. 15 (La.12/1/98), 724 So.2d 1276, 1286.
Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal. La. C.E. art. 609.1(B). However, extrinsic evidence to show a witness’s bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness. La. C.E. art. 607(D)(1). The Louisiana Code of Evidence also provides that “[particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609[2] and 609.1 [3] or as constitutionally required.” La. C.E. art. 608(B).
*949 |7The Louisiana Supreme Court has recognized that “[a] witness’s bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct.” State v. Burbank, 2002-1407, p. 2 (La.4/23/04), 872 So.2d 1049, 1050 (quoting State v. Vale, 95-1230, p. 4 (La.1/26/96), 666 So.2d 1070, 1072). A witness’s “hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest.” Vale, 95-1230, p. 4, 666 So.2d at 1072 (quoting State v. Brady, 381 So.2d 819, 822 (La.1980)). Likewise, “[a] | ^defendant's right to demonstrate facts and circumstances which might influence the witness’s perceptions or color his testimony, thereby lessening the weight the fact-finder might accord his testimony, is guaranteed in both state and federal criminal proceedings and is an important function of the right to confront and cross-examine.” State v. Bowie, 2000-3344 p. 9 (La.4/3/02), 813 So.2d 377, 385.
With regard to the scope of confrontation of witnesses, the trial court has the discretionary power to control the extent of the examination of witnesses as long as the court does not deprive the defendant of his right to effective cross-examination. State v. Hawkins, 96-0766, p. 6 (La.1/14/97), 688 So.2d 473, 479. Additionally, evidentiary rules may not supersede the fundamental right to present a defense. Id.
In this case, the State submits that the trial court did not abuse its discretion in limiting the cross-examination of Mr. Lewis regarding his alleged sales of illegal *950 materials because Mr. Lewis was not in the process of making any sales when L.R. attempted to rob him, nor had Mr. Lewis been convicted of any crime pertaining to illegal sales. Furthermore, the charged offense had no connection with Mr. Lewis’ business. Alternatively, the State contends that if this Court does find an abuse of discretion, L.R.’s conviction must stand because the denial of the defendant’s opportunity to impeach a witness for bias is subject to the harmless-error analysis.
The Louisiana Supreme Court has recognized the well-established principle that Sixth Amendment confrontation errors are subject to harmless error analysis. State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817 (citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)); see also State v. Bradley, 2008-0195 (La.App. 4 Cir. 10/1/08), 995 So.2d 1230. This Court must determine whether, assuming that the damaging potential of the cross-examination were fully realized, the error was harmless | ¡¡beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; see also State v. Louviere, 2000-2085, p. 28 (La.9/4/02), 833 So.2d 885, 905. Factors to be considered in this regard include the importance of the evidence to the State’s case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the State’s case. Id.; see also State v. Legendre, 2005-1469 (La.App. 4 Cir. 9/27/06), 942 So.2d 45.
In the present case, although Mr. Lewis’ testimony was indisputably important to the State’s case, it is evident from the record that Mr. Lewis’ testimony was corroborated on all material points by Detective Powell’s investigation. Mr. Lewis testified that he was familiar with L.R. from the neighborhood and was face-to-face with him during the robbery attempt. Mr. Lewis also positively identified L.R. in a photographic line up[4] and identified L.R. in open court.[5] Most significantly, Mr. Lewis’ testimony surrounding the incident | inwas not only uncontradicted, it was also corroborated by Detective Powell’s testimony regarding his interview with Darnell *951 Benjamin, an eyewitness to the incident who also identified L.R. as the perpetrator.[6]
As previously noted herein, the trial court permitted Mr. Lewis to be questioned directly with regard to whether he was offered immunity or anything of value in exchange for his cooperation or testimony at trial, to which Mr. Lewis responded negatively. With regard to the overall strength of the State’s case, the State presented substantial and unrefuted evidence of L.R.’s guilt. Additionally, assuming ar-guendo that any error occurred in the trial court’s limitation of questioning of Mr. Lewis, we find that the error, if any, was harmless beyond reasonable doubt, considering the undisputed evidence and testimony that was presented to the trial court.[7] Accordingly, we find that the trial court did not abuse its discretion under these particular facts and circumstances.
CONCLUSION
For the foregoing reasons, the adjudication is hereby affirmed.
AFFIRMED.

. Officer Frankie Watts also testified regarding the arrest of L.R. on December 2, 2009 as a member, of the Warrant Squad. Other than arresting L.R. pursuant to an arrest bulletin, Officer Watts did not participate in the investigation of this matter.

. Article 609 provides as follows:
A.General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the name of the crime of which he was convicted and the date of conviction is admissible if the crime:
(1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
B. Time limit. Evidence of a conviction under this Article is not admissible if a period of more than ten years has elapsed since the date of the conviction.
C. Effect of pardon or annulment. Evidence of a conviction is not admissible under this Article if the conviction has been *949 the subject of a pardon, annulment, or other equivalent procedure explicitly based on a finding of innocence.
D. Juvenile adjudications. Evidence of juvenile adjudications of delinquency is generally not admissible under this Article.
E. Pendency of appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. When evidence of a conviction is admissible, evidence of the pendency of an appeal is also admissible.
F. Arrest, indictment, or prosecution. Evidence of the arrest, indictment, or prosecution of a witness is not admissible for the purpose of attacking his credibility.

. Article 609.1 provides as follows:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
D. Effect of pending post-conviction relief procedures. The pendency of an appeal or other post-conviction relief procedures does not render the conviction inadmissible, but may be introduced as bearing upon the weight to be given the evidence of the conviction.
E. Effect of pardon or annulment. When a pardon or annulment, based upon a finding of innocence, has been granted, evidence of that conviction is not admissible to attack the credibility of the witness.
F. Juvenile adjudications. Evidence of juvenile adjudications of delinquency is generally not admissible under this Article, except for use in proceedings brought pursuant to the habitual offender law, R.S. 15:529.1.

. Detective Powell testified regarding Mr. Lewis' positive identification of L.R. from the six-person photographic lineup. Mr. Lewis also testified at trial regarding his identification of L.R. from the six-person photographic lineup:
Q. Okay. And what did you do with that set of pictures after you looked at them? Do you remember signing it or anything?
A. He showed me the picture — I don't remember exactly what I did because everything went kind of fast when I actually identified him. Soon as I saw the picture, I knew that was him, right then and there. And now what happened in the course of [sic] afterwards? I don’t remember.
Q. Whose signature appears on the back of that?
A. Mine.
Q. Okay. And whose handwriting is that?
A. Mine.
Q. And what does the handwriting say?
A. Number 6 is the boy I've given money to and also this is the person who tried to rob me.
Q. And if you could flip it over.
Q. And that’s the picture you identified?
A. Yeah.
Q. And how certain were you that that was the person who tried to rob you?
A. I was positive. I mean, he looks a little younger on this picture, but I know that’s him.

. Mr. Lewis testified at trial that he recognized L.R. immediately:
Q. As the robbery was going on, could you see the face of the person who had the gun pointed at you?
A. Not until I turned around.
Q. Okay.
A. When I turned around, I knew exactly who it was.

. Detective Powell testified at trial regarding Mr. Darnell's positive identification of L.R.:
Q.After you developed [L.R.] as a suspect, how did your investigation proceed?
A. From there my investigation proceeded that I was able to obtain a single photograph of [L.R.], who at the time was only known as Lee. Officers who were familiar with Lee knew him as [L.R.] and had a single photo of him in their files, which I was able to obtain. At that time, I had showed it to Mr. Darnell and Mr. Darnell’s mother and both of them positively identified [L.R.] as the subject they knew as Lee and also the subject who attempted to rob the victim at gunpoint, and they did sign that, which was put into evidence.

. "The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error [if any].” Broadway, p. 24, 753 So.2d at 817 (citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).