# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-869


**STATE OF LOUISIANA**

**VERSUS**

**TRACY WAYNE BOWIE**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 297,048
HONORABLE PATRICIA E. KOCH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**CONVICTION AFFIRMED. SENTENCE VACATED AND SET ASIDE IN PART AND AFFIRMED AS AMENDED. REMANDED WITH INSTRUCTIONS.**

James C. Downs
District Attorney
Monique Yvette Metoyer
Assistant District Attorney
Post Office Box 1472
Alexandria, LA 71301
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

Paula C. Marx
Louisiana Appellate Project
Post Office Box 80006
Lafayette, LA 70598-0006
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
    Tracy Wayne Bowie

**AMY, Judge.**

The State alleged that the defendant and his girlfriend engaged in inappropriate behavior with an eleven-year-old child visiting their home. At the time of the jury trial of the co-defendants, the two had married. A jury convicted the defendant of one count of indecent behavior with a juvenile. The trial court sentenced the defendant to five years at hard labor, without benefit of parole, probation, or suspension of sentence. The trial court also prohibited the defendant from having further contact with his wife. The defendant appeals. For the following reasons, we affirm the defendant's conviction. We vacate the defendant's sentence to the extent it prohibited contact with his wife. Otherwise, we affirm the defendant's sentence as amended. We remand with instructions regarding La.Code Crim.P. art. 930.8.

### Factual and Procedural Background

C.Y. contacted authorities on August 4, 2008, alleging that her eleven-year-old daughter, A.W., had been improperly touched during a July 25, 2008 overnight visit to the home of the defendant, Tracy Wayne Bowie, and his girlfriend, Avis Renea Trahan.[1] The ensuing investigation led to a grand jury charging both Mr. Bowie and Ms. Trahan with one count of indecent behavior with a juvenile, a violation of La.R.S. 14:81.

At trial, both C.Y. and A.W. testified, offering inconsistent accounts about many of the details and associated timeline. Some of the inconsistencies centered on the timing of a dispute that arose over C.Y.'s purchase of a vehicle owned by

---

[1] Ms. Trahan was a co-defendant in this matter. We separately address the appeal of her conviction and sentence. *See State of Louisiana v. Avis Renea Trahan*, 11-487 (La.App. 3 Cir. 12/7/11), _ So.3d _. The record indicates that, at the time of trial, Ms. Trahan and Mr. Bowie had married. For discussion purposes, we retain Ms. Trahan's name as it appears at the time of the alleged offense.

Mr. Bowie. He suggests that the transaction, which was ultimately unsuccessful, served as motivation for the allegations made against him.

In testifying as to the timeline of these events, C.Y. explained that she and Mr. Bowie agreed that she would assume the defendant's payments on the vehicle, although it would stay in his name until payments were complete. However, she explained that she returned the vehicle to him after discovering that he was further behind on the payments than he had revealed. She contradictorily testified that this occurred "around the first part of July," before A.W. made the subject allegation and that she picked up A.W. in the vehicle the day after the incident. A.W.'s testimony indicated, alternatively, that the car had returned to Mr. Bowie's possession both before and after the events at issue.[2]

C.Y. and A.W. also offered seemingly contradictory testimony as to whether the alleged incident occurred while A.W. was in summer school and, again, whether C.Y. picked her up from school the next day. C.Y. testified that when A.W. spent the night in July, she had packed "her sleeping clothes, a suit of clothes for the next day and her underclothes and shoes." She explained that Mr. Bowie and Ms. Trahan took A.W. to summer school the next morning and picked her up when school was over. C.Y. testified that, when she got off of work that afternoon, she went to the defendants' home in order to pick up A.W. C.Y. denied that A.W. had called her from school, informing her of the alleged touching during the

_____

[2] A.W. first said she did not know when Mr. Bowie had taken back the vehicle. When asked whether that occurred before she made the allegations, she responded, "I couldn't tell no one because he was still coming around." When later questioned regarding whether he had taken back the vehicle before she made the allegations, she answered "[y]es." However, she then testified that "like a week or so later they wanted the car back." When questioned about the inconsistency, A.W. said, "[i]t was like a long time before and they kept on coming around so I couldn't tell them right away but I told momma half of the story and they came and got the car." Later in the trial, A.W. again testified she made the allegation only after Mr. Bowie took back the car from C.Y.

overnight visit. Instead, C.Y. testified that A.W. later told her of the incident over a weekend and that she contacted authorities on the following Monday.

A.W.'s testimony regarding the events was similarly confusing regarding the timeline and details of the surrounding events. A.W. explained that she rode home from school with Mr. Bowie and Ms. Trahan on the evening of the overnight visit. However, she later testified her "mom's friend" picked her up that day. According to A.W., she went to the defendants' home to play with "their daughter," but that the daughter was not there. A.W. explained that her sister had stayed there the previous night "because she had gave [sic] [her] momma a little bit hard time." She testified that she thought her sister would spend the night again, but that her sister left. A.W. testified that, thereafter, she told the defendants that she wanted to go home, but that they would not let her.

As for the alleged conduct at issue herein, A.W. first explained simply that she and the defendants went to McDonald's and then returned to their home, where Ms. Trahan cooked. She explained that, after she told Ms. Trahan that she had a headache and that her stomach hurt, she was given a pink pill.[3] She explained that she then went to sleep in "the girl's room,"[4] but that she awoke later and was in the couple's bed wearing a t-shirt and underwear. She stated that she "got up, then [she] stretched then [she] went to go get [her] clothes and [she] changed, then [she] went outside." A.W. testified that she "told [her] teacher and [the teacher] told [A.W.] to call home."

Upon further questioning, A.W. testified that when she first woke up, "like halfway asleep," Mr. Bowie was in the bed with her. She explained that he

---

[3] Other questioning regarding the medication pertained to whether the medication could have been Benadryl and whether it was A.W.'s own medication.

[4] She later testified that she fell asleep on the sofa and then moved into the other bedrooms.

touched her on the chest "[u]nderneath"[5] her clothes, and that she then went back to sleep. A.W. stated that, when she "woke up all the way," Mr. Bowie was in the living room.

A.W. testified that, while taking a bath the next morning, Mr. Bowie came into the bathroom and began washing her. She testified that he bathed her "chest area and [her] stomach and [her] thighs." A.W. stated that she kicked and screamed, but that Mr. Bowie told her to stop. She explained that Mr. Bowie then left, and she dressed and went to school. A.W. testified that the bathing incident made her feel "[u]ncomfortable."

A.W. at one point stated that Mr. Bowie picked her up from school later that day and that they went to McDonald's, to C.Y.'s workplace, and then to Mr. Bowie's and Ms. Trahan's house. She stated that her mother picked her up there.

On other points, A.W. testified that Ms. Trahan took her to Wal-Mart on the first day, before the incident, to purchase a bra for her, although she did not wear nor did she need a bra at that time.[6] Then, when asked "while [she was] at the house did anything happen between [her] and Ms. Trahan," A.W. responded: "Yes, she just touched my chest and –." The line of questioning was not pursued.[7]

In later testimony, A.W. said again that Mr. Bowie picked her up from school after the alleged incident, and she went to his house for "like half of a day – like an hour" before C.Y. came to get her. She stated that, during that time, she and Ms. Trahan went to the mall, to Wal-Mart to buy a bra, and to McDonald's.

---

[5] A.W., however, admitted she might have said in an interview at the Rapides Children's Advocacy Center that she did not remember whether Mr. Bowie touched her "underneath" her clothes. A.W. said her memory was "[n]ot real good. I have like a bad memory."

[6] In closing arguments, the State suggested that the defendants' purchased the bra in order to "keep her quiet."

[7] This aspect of the State's case against Ms. Trahan is discussed in the appeal of her conviction. *See Trahan*, _ So.3d _.

4

She explained that, later, Mr. Bowie returned with her to Wal-Mart because the bra did not fit. However, when almost immediately thereafter questioned again about when these events happened, this colloquy occurred:

BY [DEFENDANT'S COUNSEL]: (CONTINUING)

Q      And that night, that's not the night you went to McDonald's that first night?

A      Yeah.

Q      That is. Okay. And Burger King – I mean, and McDonald's and the mall?

A      Yes.

Q      And Wal-Mart?

A      Yes.

Q      Okay. And that's the night [Defendant] took you back to the Wal-Mart?

A      Yes.

Q      That first night?

A      Yes.

Q      Not after you got off school the next day?

A      First we went to McDonald's then we went to their house. It was the next day I think. Yeah, I'm pretty sure it was the next day.

       . . . .

Q      And you went to McDonald's and the mall the first night?

A      Yes.

Q      And then Wal-Mart before the mall or after the mall?

A      No, before.

Q      Before you went to the mall you went to Wal-Mart—

A      Yes.

5

Q      --that first night?

A      Yes.

Despite the timeline inconsistencies, A.W. clearly testified that she told her teacher about what had happened and that her teacher told her to call C.Y. When asked what she told her mother in the telephone call, A.W. responded: "I say, momma, can you come get me, I don't feel good and I've been – I think I've been messed with and can you come pick me up." A.W. said C.Y. did not ask on the phone who "messed" with her, but she told her it was "Tracy." Contrary to other statements regarding Mr. Bowie picking her up at school, A.W. testified that she then said her mother "got mad" and came to school to pick her up.[8]

As stated above, C.Y. denied that A.W. called her from school. Further, Detective Stephen Phillips of the Rapides Parish Sheriff's Department testified that a teacher is a mandatory reporter and that no report was filed in this regard. Instead, he explained that the first report he received concerning this alleged incident was dated August 4, 2008.

Detective Phillips testified that, when the investigation commenced, Mr. Bowie was interviewed, but that he denied touching A.W. Also during the investigation, a social worker who was a forensic interviewer at the Rapides Children's Advocacy Center, interviewed A.W. regarding the allegations. At trial, the social worker testified that A.W. looked at an anatomical drawing of a female body and circled parts where she said she was touched. According to the social worker, A.W. identified "[g]irl's body parts" from a drawing and that the areas A.W. said that Mr. Bowie touched were in orange marker. The anatomical drawing, entered into evidence, lists "boobies," "chest," "stomach," and "thighs"

---

[8] Contrary to this, A.W. also testified she did not tell her mother that day because she "got scared," and "they told [her] not to tell." At that point in the trial, A.W. testified she told her mother "about a month later or a little less."

as those areas identified by A.W. A.W. also circled what she considered to be "private parts" on the drawing and identified that as areas where she was not touched. A.W. testified at trial that the names assigned on the body parts on the anatomical drawing are the names she said.

Following the above testimony, the jury convicted both Mr. Bowie and Ms. Trahan of one count of indecent behavior with a juvenile. At sentencing, the trial court sentenced Mr. Bowie to five years at hard labor, without benefit of parole, probation, or suspension of sentence. Additionally, the trial court ordered the defendant to have no contact with the victim, her family, or Ms. Trahan.

Mr. Bowie appeals, questioning the sufficiency of the evidence presented by the State, the sentence insofar as it prohibited him from having contact with Ms. Trahan, the trial court's limitation on cross-examination of C.Y., and certain statements by the prosecution which he alleges impermissibly alluded to his right to testify.

## Discussion

*Errors Patent*

Our review of this matter pursuant to La.Code Crim.P. art. 920, reveals the trial court informed Mr. Bowie that: "post conviction relief applications must be filed within two years as well as any appeal notice of thirty days." However, La.Code Crim.P. art. 930.8 provides that a defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. Accordingly, we remand this matter with instructions to the trial court to inform Mr. Bowie of the correct provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record that Mr. Bowie received the notice.

*Sufficiency of the Evidence*

Mr. Bowie contends the evidence was insufficient to convict him of indecent behavior with a juvenile insofar as he contends that the testimony of A.W. and C.Y. was irreconcilable. He further asserts that their allegations came only after he "rightfully took his car back" from C.Y. Mr. Bowie also points out that the State presented no physical evidence in support of its case.

When reviewing the sufficiency of the evidence on appeal, an appellate court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have determined that the State proved the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). An appellate court will not second guess credibility determinations beyond this sufficiency evaluation insofar as the trial court or jury fulfills the role of the fact finder in weighing the credibility of witnesses. *See id.*. Notwithstanding this standard, the record must indicate that the State satisfied its burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

As is pertinent to this case, La.R.S. 14:81(A) provides that:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

The above provision does not define "lewd" or "lascivious." However, the supreme court has determined that the statute "provides fair notice that the defendant 'is charged with having done an act upon the person of a juvenile which

8

is lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner.'" *State v. Interiano*, 03-1760 (La. 2/13/04), 868 So.2d 9, 15 (quoting *State v. Holstead*, 354 So.2d 493, 498 (La.1977)). Additionally, according to the terms of La.R.S. 14:81(A), the State must prove that the defendant perpetrated the act with "the intention of arousing or gratifying the sexual desires of either person[.]"[9]

As shown above, A.W.'s trial testimony was unquestionably inconsistent and confusing. At times, it conflicted in certain details with the testimony of C.Y. Additionally, upon questioning by the authorities, Mr. Bowie repeatedly denied the allegations of touching in the bed, denied changing A.W.'s clothes, and denied the bathing incident.

However, the jury credited A.W.'s version of events and did so upon questioning that revealed the confusion and inconsistency in certain aspects of her testimony. A.W. testified that Mr. Bowie touched her on the chest and underneath her clothing when she awoke in his bed. Also, she consistently testified that Mr. Bowie entered the bathroom while she was in the bathtub, washing her chest, stomach, and thighs. She explained that this event made her feel uncomfortable and that Mr. Bowie told her to "stop" when she kicked and screamed. The jury also heard corroborating testimony from the social worker who interviewed A.W. at the Advocacy Center. She explained that A.W. had listed the "boobies" as a place that Mr. Bowie had touched. The anatomical drawing, with marks on areas labeled "boobies," "chest," "stomach," and "thighs" was also entered into evidence.

---

[9] The State's burden of proving the respective ages of both the victim and the defendant is not contested here. The record clearly establishes that, at the time of the events at issue, A.W. was eleven-years-old and Mr. Bowie was forty-one-years-old.

Although our review on appeal reveals the inconsistencies cited by Mr. Bowie, we are mindful that "the testimony of the victim alone is sufficient to establish the elements of a sexual offense." *State v. Willis*, 05-218, p. 15 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 378-79, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied,* 549 U.S. 1052, 127 S.Ct. 668 (2006). We do not disturb the jury's credibility determination. Instead, we conclude that if the jury credited her account, the nature of the events was sufficient to demonstrate both a lewd or lascivious act upon A.W. and that it was committed with the intention of arousing his sexual desires pursuant to La.R.S. 14:81.

This assignment lacks merit.

*Sentence*

The defendant next contests that aspect of his sentence which prohibits further contact with Ms. Trahan, his wife at the time of trial. He contends that this portion of the sentence "shocks one's sense of justice and must be stricken."

At the sentencing hearing for Mr. Bowie and Ms. Trahan, the trial court stated that: "[T]here is no longer any contact between you and Ms. Bowie . . . . I think it's appropriate that y'all's [sic] relationship needs to end and move forward for both of your lives separately." When Ms. Trahan's attorney reminded the trial court that the defendants were "legally married," the trial court responded: "Yes, I do. And I'm following the recommendations of them, is that for them to move forward that perhaps no contact with each other might would help."

However, the sentencing component of La.R.S. 14:81 provides, in pertinent part, that:

> [H](2) Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At

10

least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

We find no aspect of the sentencing statutes permitting the trial court to prohibit contact with a non-victim spouse. Therefore, we vacate and set aside this portion of the defendant's sentence. We affirm the defendant's sentence as amended.

*Cross Examination of C.Y.*

C.Y. admitted at trial that she pled guilty to one count of possession of a Schedule IV controlled dangerous substance in August 2009, after this alleged incident. The defendant contends that the trial court erred in restricting his cross-examination of C.Y. concerning "the numerous other charges that were dismissed as part of the plea."[10]

Louisiana Code of Evidence Article 609.1(A) provides that, in a criminal case, "every witness by testifying subjects himself to examination relative to his criminal convictions[.]" *See also* La.Code Evid. art. 607(D)(1). This general rule, is, however, subject to certain limitations found in the remainder of the Article 609.1. Pertinent to this is the exception found in Paragraph B, which provides that:

> Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has been only an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

---

[10] Proffered testimony showed C.Y. was accused of fraudulently obtaining prescription medication. She testified a patient of the physician for whom she worked "was using [her] name to obtain Soma's from Fred's Pharmacy." C.Y. confirmed that she was originally charged with nineteen counts of obtaining a controlled dangerous substance (CDS) by fraud and with one count of possession of a Schedule II or Schedule IV CDS. On this latter charge, she explained that she had two Darvocet pills in her purse the day she was arrested. C.Y. explained that she entered a guilty plea to the possession charge upon the advice of her attorney and that she had worked for one hundred and twenty days as an undercover agent, buying and selling drugs. In the proffered testimony, C.Y. denied receiving an incentive to testify in any particular way in Mr. Bowie's case and that the assistant district attorney representing the State asked her on the morning of trial of this matter if she had any felony convictions.

C.Y.'s testimony before the jury was only that she had been convicted of felony possession of a Class IV CDS on August 27, 2009.

11

However, jurisprudence has indicated that pending charges against a witness may be appropriate grounds for questioning to show the State may have leverage over a witness's testimony. *See, e.g., State v. Vale*, 95-1230 (La. 1/26/96), 666 So.2d 1070*; State v. Davis*, 00-2685 (La.App. 1 Cir. 11/9/01), 818 So.2d 76 (citing *State v. Rankin,* 465 So.2d 679 (La.1985); *State v. Brady,* 381 So.2d 819 (La.1980)). We note too, that dismissed charges may be considered "pending" when the time limitations for institution of prosecution have not elapsed. *State v. Landry,* 583 So.2d 911 (La.App. 1 Cir. 1991).

On review, we do not disturb the trial court's ruling. Instead, we conclude that, even if the trial court erred in limiting cross-examination of C.Y. regarding the dismissed charges, any such error was harmless insofar as the verdict was surely unattributable to that error. *See State v. Vale*, 96-2953 (La. 9/19/97), 699 So.2d 876. *See also State v. Butler*, 30,798 (La.App. 2 Cir. 6/24/98), 714 So.2d 877, *writ denied*, 98-2217 (La. 1/8/99), 734 So.2d 1222. In this case, C.Y. was not the primary witness against Mr. Bowie and, in fact, did not testify as to the occurrences alleged by A.W. insofar as she was not present at the time. In fact, much of C.Y.'s testimony was contrary to that of her daughter. In light of this, we conclude that any error alleged by Mr. Bowie in this regard was, at most, harmless.

Accordingly, we find no merit in this assignment.

*Statement Regarding the Right to Testify*

In his final assignment, Mr. Bowie argues that certain comments by the State deprived him of the constitutional presumption of innocence and the rights guaranteed by the Fifth Amendment to the United States Constitution. He contends the trial court erred in denying his motion for mistrial based on the State's indirect reference to his right not to testify.

12

During *voir dire* with the first prospective jury panel, Ms. Trahan's counsel commented:

> So if you see – if two kids are on the playground and – and there's a broken window and Johnny says, Tommy did it, and Tommy just stands there and doesn't say, oh no, Johnny did it, you'd know, right, that Tommy probably did it, huh, because that's just natural, that's the way people act. But you understand that we have rules in court that when people say stuff about you and you're sitting over there you're not allowed to jump up. If you do you're going to be in trouble. You're not allowed to holler out, you're not allowed to say, wait, wait a second. So it's kind of an unnatural setting. It's not like regular life. People are going to have to sit there and take it and take it and take it and they're not allowed to respond like anybody else would, even in – even in church, a church business meeting. You know, if you have ever been to a Baptist church, a business meeting, that is the purest form of democracy on earth. It's so pure sometimes it gets ugly. People are not going to take it in a business meeting, they're going to say, no, no, that's not right. But here today you're going to – you're going to see people be talked about and they're going to not be able to respond.

The State objected, stating:

> Your Honor, I think that may be a mischaracterization to the jury. Definitely the burden of proof is on the State and we accept that burden but to say or to allude to the jury that the defendants in this case don't have a right to testify is to mislead them. They don't have to testify and I think the jury understand [sic] that but to make it seem as though they're not going to be allowed and that they are just going to be hammered upon by the State, that is absolutely incorrect.

Based on this language, Mr. Bowie moved for a mistrial on grounds that the State violated his right not to testify. The trial court denied the motion and instructed the jury that, "the State has the obligation to prove their [sic] case beyond a reasonable doubt and the defendants are here cloaked in the cloak of innocence and they're presumed innocent." The trial court's admonition did not include an instruction regarding Mr. Bowie's right not to testify.

A mistrial based on prejudicial remarks is proper when a remark made within the jury's hearing refers to "[t]he failure of the defendant to testify in his own defense[.]" La.Code Crim.P. art. 770(3). However, mistrial is appropriate

only when the State's indirect remarks were "intended to focus the jury's attention on the defendant's not testifying." *State v. Packnett*, 04-709, p. 11 (La.App. 5 Cir. 12/28/04), 892 So.2d 615, 622 (citing *State v. Mitchell,* 00-1399 (La. 2/21/01), 779 So.2d 698), *writ denied,* 05-599 (La. 6/3/05), 903 So. 2d 455. Further, a comment that does not refer to the defendant's failure to take the stand does not require mistrial. *State v. Shea,* 421 So.2d 200 (La.1982), *rev'd on other grounds*, 470 U.S. 51, 105 S.Ct. 1065 (1985). In *Shea*, the State asked a potential juror during *voir dire* if she would hold the defendant's failure to testify, as he had the right to do, against him. The Louisiana Supreme Court held the comment was not "a comment on the failure of the defendant to take the stand[,]" but rather, was a mere mention of "the defendant's constitutional privilege not to do so[.]" *Id.* at 206.

Here, the State referred to defense counsel's comments as suggesting his client did not have the right to testify. We find that, in this context, the State's objection was not a comment on the failure of Mr. Bowie to testify and, thus, did not require a mistrial. The State's comments did not misstate Mr. Bowie's right not to testify, but instead clarified that right to the jury.

This assignment lacks merit.

**DECREE**

For the foregoing reasons, the conviction of the defendant, Tracy Wayne Bowie, is affirmed. That portion of the sentence imposed which prohibits contact between the defendant and his wife is vacated and set aside. Otherwise, the defendant's sentence is affirmed as amended. This matter is remanded with instructions to the trial court to inform the defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten

days of the rendition of this opinion and to file written proof in the record that the

defendant received the notice.

**CONVICTION AFFIRMED. SENTENCE VACATED AND SET ASIDE IN PART AND AFFIRMED AS AMENDED. REMANDED WITH INSTRUCTIONS.**