# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-401**

**STATE OF LOUISIANA**

**VERSUS**

**RJ BARTIE**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 8774-19
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**LEDRICKA J. THIERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

**Stephen C. Wright, District Attorney**
**John Eric Turner, Assistant District Attorney**
**14th Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA  70601**
**(337) 427-3400**
**COUNSEL FOR APPELLEE:**
        **The State of Louisiana**

**Meghan Hartwell Bitoun**
**Louisiana Appellate Project**
**P.O. Box 4252**
**New Orleans, LA  70119**
**(504) 470-4779**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **RJ Bartie**

**THIERRY, Judge.**

Defendant appeals his convictions and sentences for home invasion, second degree kidnapping, and attempted second degree kidnapping. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 6, 2018, there was an incident between Defendant, RJ Bartie, and his wife, Adrienana R. Bartie. On that date, Defendant and Adrienana had been separated for approximately one month. During that time period, Adrienana had been staying with her parents, John and Paulette Rene, at their home. Due to the contentious relationship at that time between Defendant and Adrienana, he was not welcome at the home. On the above date, while Adrienana and her parents were outside in the backyard patio of the home during the evening, they saw a vehicle's headlights coming up an alley which led towards the back of the house. Defendant got out of the vehicle and began approaching the patio. Adrienana's parents walked towards Defendant and asked him to leave, but Defendant refused. Defendant was carrying a firearm which he pointed at Adrienana's parents and told them he was there to "get" his wife.

During the time her parents approached Defendant, Adrienana had fled into the home. Defendant pursued her in there, and when Paulette followed Defendant into the home, she saw Defendant "had Adrienana up against the refrigerator and her feet were dangling and he had the gun to her head." Defendant then physically dragged Adrienana out of the house to his vehicle. Paulette then attempted to grab Defendant as he was dragging her daughter out of the house, and Defendant struck her and knocked her to the floor. When Defendant reached the vehicle, he placed Adrienana into the passenger seat and ran to the drivers side to get in. As he was doing this, John approached him armed with his own firearm and told him to let his

1

daughter go or he would shoot. As that confrontation ensued, Paulette opened the passenger door and told her daughter to run.

Adrienana then ran back inside the house and Defendant pursued her. Defendant grabbed her from inside again and began, once more, dragging her to his vehicle. In the process he knocked Paulette and John to the ground. Defendant reached his vehicle and pushed Adrienana inside. John approached, and again, told Defendant if he did not let his daughter go, he would shoot. When Defendant proceeded to go to the driver's side to get into the vehicle, John shot him in the back. Private security footage from the Rene's home recorded the encounter.

Shortly after the shooting, police arrived on the scene. John was initially placed under arrest and put in a police car. While in transit to the police station, the officers on the scene watched the surveillance video and then radioed to the police that John was no longer under arrest and he was returned to his home.

Defendant was transported to the hospital where he received treatment for his gunshot wound. Detective Ben Randolph questioned Defendant at the hospital later that night. Detective Randolph later testified, in his experience as being certified in field sobriety testing, he did not believe Defendant was under the influence of drugs or alcohol that night.

On April 5, 2019, Defendant was charged by bill of information with one count of home invasion, in violation of La.R.S. 14:62.8; two counts of attempted second degree kidnapping, in violation of La.R.S. 14:27 and 14:44.1; and one count of aggravated assault with a firearm, in violation of La.R.S. 14:37.4. On January 20, 2021, an amended bill of information was filed which dismissed the aggravated assault with a firearm charge and changed the attempted second degree kidnapping charges into second degree kidnapping charges in violation of La.R.S. 14:44.1.

2

The matter proceeded to trial on September 9, 2021, was interrupted when this court issued an emergency stay on September 10, and concluded on September 16, 2021, when Defendant was found guilty of home invasion, guilty as charged on one count of second degree kidnapping and found guilty of the responsive verdict of attempted second degree kidnapping on the other count.[1]

On January 7, 2022, the trial court sentenced Defendant to thirty years at hard labor for home invasion; thirty years at hard labor without benefit of probation, parole or suspension of sentence for second degree kidnapping; and twenty years at hard labor without benefit of probation, parole or suspension of sentence for attempted second degree kidnapping. The sentences were ordered to run concurrently, with credit for time served.

Defendant now appeals his convictions and sentences, assigning three errors related to his convictions and one error related to his sentences:

1. The trial court erred in denying him the right to present a defense when it ruled he could not present evidence of PTSD without pleading not guilty by reason of insanity where he was not arraigned on the bill of information;

2. The trial court erred in allowing the State to introduce part of a page of Defendant's journal;

3. The trial court erred in refusing to give the jury a requested special instruction related to compromise verdicts;

4. The sentences imposed were unconstitutionally excessive.

**ANALYSIS**

In his first assignment of error, Defendant contends "[t]he trial court erred in denying Mr. Bartie the right to present his defense pertaining to PTSD under

---

[1] The emergency stay was issued when defense counsel sought review of the trial court's ruling that held Defendant was prohibited from putting forth evidence of his post-traumatic stress disorder (PTSD) diagnosis. *State v. Bartie*, 21-584 (La.App. 3 Cir. 9/16/21) (unpublished opinion). This court found no error in the trial court's ruling excluding any evidence of PTSD or other evidence regarding his mental health.

3

[La.Code Crim.P.] Article 726 when the trial court failed to arraign him on the amended bill of information." Initially, we note Defendant argues the trial court should have allowed him to present a PTSD defense because he filed a motion under La.Code Crim.P. art. 726, which states:

> A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.

> B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.

While the article refers to a "mental disease, defect, or other condition," notice given under La.Code Crim.P. art. 726 typically relates to intoxication defenses. Defendant concedes in brief that the State construed the notice as such prior to trial. Furthermore, the trial court's ruling that evidence of Defendant's intoxication on the night of the event was admissible indicates the trial court's belief that Defendant's notice was related to intoxication. Defendant's notice did nothing to give any different impression as it simply stated he "intend[ed] to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, pursuant to Louisiana Code of Criminal Procedure Art. 726." Finally, we note that in his supplemental brief to this court during the emergency writ application on the issue of the trial court's exclusion of PTSD evidence, defense counsel explicitly stated that, "From the outset, defense counsel gave notice of his intent pursuant to [La.Code Crim.P.] Art. 726 to raise the defense of intoxication. To support that

4

defense, defense counsel desired to have the defendant testify regarding his struggles with alcohol abuse and depression by way of PTSD."

The trial court's ruling that evidence of PTSD was inadmissible where the Defendant did not plead "not guilty by reason of insanity" was based upon La.Code Crim.P. art. 651, which states that, "When a defendant is tried upon a plea of 'not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible." This court affirmed that ruling during trial. *See State v. Bartie*, 21-584 (La.App. 3 Cir. 9/16/21) (unpublished opinion). As such, any argument the trial court erred in disallowing a PTSD defense on these grounds fails.

Realizing that this court has already affirmed the trial court's denial of a PTSD defense without pleading not guilty by reason of insanity, Defendant now contends the trial court's ruling, and Defendant's entire trial, should be vacated because he was never arraigned on the amended bill of information. However, Defendant acknowledges:

> Generally, if a bill of information states the essential facts of the offense charged, the defendant does not object to any error in the bill of information, and the defendant does not claim surprise or prejudice, any error in the bill of information is harmless. *State v. Morris*, 614 So.2d 180 (La.App. 3 Cir. 1993); *State v. Boswell*, 96-801 (La.App. 3 Cir. 2/12/1997), 689 So.2d 627, 632.

Instead, Defendant contends the error was not harmless because "the failure to arraign Mr. Bartie on the amended bill of information deprived him of his right to present a defense, in that it completely foreclosed his ability to present his defense regarding his PTSD and its impact on his actions." We disagree. The incident in question and the alleged actions of Defendant were not changed by the filing of the amended bill of information on January 20, 2021; a charge was removed and his charges of attempted second degree kidnapping were amended to second degree kidnapping based on the fact that his actions of forcibly moving his

5

estranged wife from her parents' home to a car she did not want to enter satisfied the second degree kidnapping statute. The essential elements remained the same, Defendant did not object to the amended bill of information, and he never claimed surprise or prejudice with regard to the filing of the amended bill. Defendant's contention that the State's failure to arraign him deprived him of the opportunity to present his defense is inaccurate. Under La.Code Crim.P. art. 561:

> The defendant may withdraw a plea of "not guilty" and enter a plea of "not guilty and not guilty by reason of insanity," within ten days after arraignment. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial.

The amended bill of information was filed in January of 2021 and provided to Defendant via discovery the following day. Given that Defendant's trial began on September 10, 2021, Defendant had more than seven months during which he could have sought to change his plea. Defendant never filed a motion to change his plea, with counsel going so far as to state in open court that "I'm not changing my plea." This assignment of error lacks merit because Defendant was prevented from presenting a defense not through trial court error, but as a result of Defendant's attempt to circumvent the clear mandate of La.Code Crim.P. art. 651.

In his second assignment of error, Defendant contends "[t]he trial court erred in allowing the State to publish only a portion of the journal to the jury." The issue of whether the State could introduce only a portion of a page from Defendant's journal was already addressed during the emergency writ application filed by Defendant during trial. In his supplemental brief on the emergency writ application, Defendant contended the trial court erred by allowing the State to introduce his full journal into evidence while publishing only a tiny portion, then prohibiting defense counsel from addressing the sections of the journal which directly addressed Defendant's PTSD.

In *State v. Dickerson*, 14-170, pp. 9-10 (La.App. 3 Cir. 6/4/14), 140 So.3d 904, 909-10, *writ denied*, 14-1466 (La. 3/13/15), 161 So.3d 638, this court stated the following regarding the "law of the case" doctrine:

> Under the "law of the case" doctrine, prior decisions of the appellate court are considered binding and may not be reconsidered on appeal absent clear error. *Juneau v. State*, 06-1653 (La.App. 3 Cir. 5/2/07), 956 So.2d 728, *writ denied*, 07-1177 (La. 9/14/07), 963 So.2d 1004; *State v. Molineux*, 11-275 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, *writ denied*, 11-2556 (La. 3/30/12), 85 So.3d 117. "[T]he [law of the case] doctrine is *discretionary* and should not be applied where it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." *Juneau*, 956 So.2d at 733 (quoting *Trans La. Gas Co. v. La. Ins. Guar. Ass'n*, 96-1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896) (alternations in original).
>
> . . . .
>
> As this honorable court has already ruled on the issue of whether Defendant is entitled to discover the identities of the informants, it may not be reconsidered on appeal absent clear error by the appellate court. Defendant has failed to present any new evidence showing that the denial amounted to clear error or an unjust result. As such, we shall not reconsider Defendant's right to discover the identity of the informants on appeal.

Defendant presents no new or original argument for why this court should change its prior ruling; indeed, Defendant does not mention the emergency writ in this case at all. Given Defendant's failure to present anything new beyond the fact that he proffered testimony into the record, the law of the case doctrine applies and this court's prior ruling stands.

In his third assignment of error, Defendant contends "[t]he trial court erred in failing to instruct the jury as to the Defense Request for Special Jury Instruction." Specifically, Defendant is contesting the trial court's refusal to give the following instruction to the jury: "You may return any responsive verdict listed on the verdict form, even though you find that the State has proven beyond a reasonable doubt every element of the offense charged." Defendant asserts, as he

did in the trial court, that the instruction is correct in light of *State v. Porter*, 93-1106 (La. 7/5/94), 639 So.2d 1137. We find no merit in this assignment of error.

Under La.Code Crim.P. art. 807:

> The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
>
> A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

Defendant contends the trial court should have instructed the jury that even if the State proved every element of the offenses charged, the jury could simply choose to convict Defendant of a lesser included offense. We note this exact argument has been addressed, and denied, by this court. In *State v. Kidd*, 22-227 (La.App. 3 Cir. 9/14/22), 348 So.3d 243, the defendant argued the trial court erred in prohibiting him from discussing "compromise verdicts" or jury nullification. Noting that the trial court allowed discussion of responsive verdicts and correctly pointed out that *Porter* was focused on the exclusion of a valid responsive verdict listed under La.Code Crim.P. art. 814, this court affirmed the trial court's ruling that held discussion of responsive verdicts was proper, but a discussion of finding a responsive verdict when the jury agreed the State had proven its case on the charged offense was improper.

Furthermore, the court in *Kidd* noted:

> Additionally, in the case of *State v. Campbell*, 21-437 (La.App. 3 Cir. 7/13/21) (unpublished opinion) (footnote omitted), this court ruled and stated:
>
> > **WRIT GRANTED AND MADE PEREMPTORY, IN PART; WRIT DENIED, IN PART:** The defense filed a writ application with this court seeking supervisory

8

review of the trial court's July 12, 2021, ruling limiting the scope of voir dire concerning defense counsel's discussion of responsive verdicts. To the extent the district court prohibited Defendant's discussion both of lesser included offenses and of compromise verdicts as set forth under *State v. Porter*, 639 So.2d 1137 (La.1994), Defendant's writ application is granted. Defendant is allowed to discuss with the jury venire the lesser included offenses in this case as well as the use of those lesser included offenses to reach a compromise verdict. Defendant is additionally allowed to ask questions to ascertain the jury venire's understanding thereof.

To the extent defense counsel, in brief, seeks to extend the scope of voir dire to include questions regarding the venire's attitude toward returning a responsive verdict even though the jurors have found the charged offense proven beyond a reasonable doubt, Defendant's writ application is denied. *See State v. Holmes*, 06-2988 (La.12/2/08), 5 So.3d 42, *cert. denied*, 558 U.S. 932, 130 S.Ct. 70 [175 L.Ed.2d 233] (2009); *see also, State v. Tilley*, 99-569 (La. 7/6/00), 767 So.2d 6, *cert. denied*, 532 U.S. 959, 121 S.Ct. 1488 [149 L.Ed.2d 375] (2001).

The case is remanded to the trial court for actions consistent with this ruling.

348 So.3d at 253.

In *State v. Campbell*, 21-437 (La.App. 3 Cir. 7/13/21) (unpublished opinion), this court explicitly refused to allow questioning during voir dire regarding the jury choosing a responsive verdict, despite finding the State had proven the charged offense beyond a reasonable doubt. While Defendant tries to argue that his jury instruction was aimed at "compromise verdicts," the wording of the instruction makes clear Defendant sought to instruct the jury it could ignore the fact that the State proved its case and return any verdict it wished. That is not a valid statement of law, as evidenced by this court's rulings in *Kidd* and *Campbell*. As the jury instruction was not a valid statement of law, Defendant was not entitled to have the instruction given to the jury under La.Code Crim.P. art. 807.

In his final assignment of error, Defendant contends his sentences "are excessive in light of the fact that Mr. Bartie is now wheelchair-bound, and in light of the mitigating circumstances of Mr. Bartie's PTSD and alcoholism." Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Defendant failed to file a motion to reconsider sentence; therefore, his argument regarding the impact of himself being wheelchair-bound and his history of PTSD and alcoholism are not properly before this court. Uniform Rules—Courts of Appeal, Rule 1-3. However, this court has often allowed defendants a right to a bare excessiveness review of their sentence, even when they fail to urge such a claim in the trial court; therefore, we will review the claim as a general excessiveness claim. Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or

10

that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Furthermore, in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *and writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, which established that an appellate court

should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes.

We note Defendant was convicted of home invasion, second degree kidnapping, and attempted second degree kidnapping, all crimes of violence under La.R.S. 14:2(B). Additionally, evidence introduced and published at trial indicated Defendant had been thinking about killing his estranged wife and himself.

Based upon the PSI ordered in this case, Defendant was married to the victim for fifteen years and that they had three sons whose ages ranged from nine to twenty-one years old. Defendant also has another son from a prior relationship. Defendant attended college briefly on an athletic scholarship before being dismissed due to a fight during practice. Defendant served in the United States Army for fifteen years prior to being honorably discharged in November of 2017. At that time, he was considered seventy percent disabled by the military due to hearing loss, shoulder joint pain, and depression. A diagnosis of PTSD in November of 2019 caused his disability status to be upgraded to fully disabled. As a result of the gunshot wound sustained by Defendant during the instant offense, he is paralyzed from the waist down. Defendant has admitted to heavy marijuana use prior to joining the military as well as heavy alcohol use dating back to the age of sixteen, claiming he was drunk every time he abused his wife during their relationship. Defendant is technically a first-felony offender despite the instant case involving three felony crimes of violence.

Defendant's maximum sentencing exposure was a range of one to thirty years at hard labor for home invasion; a range of five to forty years at hard labor for second degree kidnapping, at least two years of which must be without benefit of probation, parole, or suspension of sentence; and a range of two-and-a-half to twenty years at hard labor for attempted second degree kidnapping, with at least

12

one year served without benefit of probation, parole, or suspension of sentence. Accordingly, Defendant received maximum sentences for home invasion and attempted second degree kidnapping while his thirty-year sentence without benefits for second degree kidnapping represents seventy-five percent of the maximum.

We note the following from *State v. Jackson*, 48,552, pp. 33-34 (La.App. 2 Cir. 1/29/14), 132 So.3d 516, 535, *writ denied*, 14-394 (La. 9/19/14), 148 So.3d 952, *and writ denied*, 14-412 (La. 9/26/14), 149 So.3d 260:

> As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto,* 2007-2031 (La.2/15/08), 974 So.2d 665; *State v. McKinney,* 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802. However, the reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. *State v. Esque,* 46,515 (La.App.2d Cir.9/21/11), 73 So.3d 1021, *writ denied,* 2011-2347 (La.3/9/12), 84 So.3d 551.

In *Jackson*, the second circuit affirmed a maximum sentence of forty years at hard labor without benefits for second degree kidnapping where the defendant had struck the victim, his long-term romantic partner, in the head with a gun and threatened to kill her and their children two months before the victim's car was found burning and she was never seen again.

The trial court specifically stated he felt maximum sentences would be appropriate because he found the "home invasion was committed with the intent to carry out a murder, a kidnapping, murder, and suicide." The trial court also stated that, under La.Code Crim.P. art. 894.1, it found Defendant's conduct constituted deliberate cruelty to the victim, knowingly created a risk of death or great bodily harm, used violence during the offenses, there was a significant permanent injury to the family, and Defendant used a dangerous weapon during the commission of the offense.

While Defendant contends he is not the worst offender and therefore should not be ordered to serve a maximum sentence, we note Defendant is not technically serving the maximum to which he was exposed. While it is true that Defendant's sentences for home invasion and attempted second degree kidnapping are maximum sentences for those crimes, all of his sentences are to run concurrently, meaning the only sentence he is actually serving is his sentence for second degree kidnapping, which is thirty years at hard labor without benefit of probation, parole, or suspension of sentence. As previously noted, the maximum for second degree kidnapping is forty years at hard labor without benefits. Given the above and the fact the trial court took notice of Defendant's admission that he was planning to murder the victim before committing suicide, we cannot say the trial court abused its discretion in the sentences imposed on Defendant.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**